BARBARA L. BRENNAN, Respondent-Appellant, v ROBERT J. BRENNAN, Appellant-Respondent.—Main, J.

This matter has previously been before this court and the essential facts and necessary background are set forth in our prior decision (103 AD2d 48). In sum, this court found that the trial court erred in its determination that the 107 head of cattle and the farm equipment on the parties' farm were the separate property of defendant and, thus, not subject to equitable distribution. However, we further found that defendant was entitled to a credit for his initial capital contribution to the spousal enterprise in 1958, i.e., the 32 cattle and the farm equipment from his Connecticut farm, which we found were a factor in the growth of the family business (supra, at p 54). Accordingly, this court modified and remitted "solely for the purposes of fixing the value of cattle and equipment initially contributed by [defendant] when the parties married, crediting [defendant] with the amount so determined and recalculating [plaintiff's] distributive award consistently with the decision herein" (supra, at p 55).

Upon remittal, the parties stipulated that the 1958 value of defendant's initial contribution, the 32 cattle and the farm equipment, was $18,605. Defendant, contending that he was entitled to a credit based upon 1981 dollars, presented the evidence of an economist who opined that the inflation-adjusted value in 1981 dollars was $58,605. The original trial court's determination as to the value of the current 107 head of cattle, equipment and machinery on the farm at $98,710 was accepted by Trial Term and, in accordance with this court's finding, Trial Term found that this property constituted marital property. After deducting from that figure the $18,605 value of the property transferred from Connecticut, the resultant figure was added to the marital assets for a total of $549,225. Applying this court's approved share of 40% and deducting a credit of $1,290, Trial Term determined plaintiff's distributive share of the marital property to be $217,463.60. When defendant testified that he would be unable to pay that amount without selling the farm and his expert indicated that a three-year period for sale would have to be provided to ensure the securing of a fair price, Trial Term ordered the immediate payment to plaintiff of $100,000 with the balance, secured by a bond and mortgage bearing interest at 9%, to be paid when defendant sold the farm or upon the expiration of three years, whichever first occurred. Plaintiff was directed to transfer her interest in the farm to defendant within 60 days.

Defendant promptly moved to vacate Trial Term's judgment upon the ground that the court failed to consider the tax consequences with respect to the transfer of plaintiff's interest and defendant's subsequent sale of the farm. Plaintiff cross-moved for additional counsel fees. The motion and cross motion were denied and both parties have appealed from the judgment and denial of their respective motion and cross motion.

Defendant now contends that Trial term erred in accepting the $18,605 figure in that defendant was entitled to have his initial contribution evaluated to reflect 1981 dollar values, and that Trial Term should have considered the tax consequences to the parties. Plaintiff, for her part, urges that she was entitled to additional counsel fees.

In support of his first contention, i.e., that the value of his 1958 initial contribution of cattle and farm equipment should have been adjusted upward to reflect the results of inflation, defendant relies upon *O'Brien v O'Brien* (66 NY2d 576). That case is clearly distinguishable from the case at bar. Marital property is defined as "all property acquired by either or both

spouses *during the marriage* and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held" (Domestic Relations Law § 236 [B] [1] [c] [emphasis supplied]). The subject of the conflict in *O'Brien* was the husband's license to practice medicine. The license was acquired during the marriage and its acquisition was made possible, in no small part, as a result of the wife's dedicated assistance in contributing her labors and money to the marital enterprise. At bar, we are concerned not with marital property, but rather with the amount to be credited for appreciation of separate property acquired by defendant prior to the marriage. Inasmuch as it was established "that the productive life and marketable value of the 32 cattle [defendant] brought to the marriage had been totally dissipated within a relatively short period of time thereafter, coinciding generally within the time frame of [plaintiff's] active participation in the farming operations" and that the equipment contributed had worn out and was replaced *(Brennan v Brennan, supra,* p 52). There was no appreciation in value of the premarital separate property. Moreover, in remitting this matter, this court specifically directed that a "determination will, therefore, have to be made of the value of the original 32 head of cattle and equipment *when the parties married" (supra,* at p 54 [emphasis supplied]).

Regarding defendant's final contention, we recognize that just prior to the hearing in this case, a change in the Federal tax law occurred so that, as it now stands, no gain or loss is recognized at the time of the transfer of the farm by plaintiff to defendant and that defendant, as the transferee spouse, takes the property at the transferor's basis, the transferor being plaintiff (26 USC § 1041 [b] [2]). The entire tax burden is now borne by the transferee spouse upon that spouse's sale of the property. In ordering the immediate payment of $100,000 and transfer by plaintiff of her interest in the farm, Trial Term made no reference to tax consequences. When, in moving to vacate the judgment, defendant urged that the tax consequences be considered, Trial Term declined the invitation and stated that it was for this court to decide.

It seems clear that this court, in its discretion, may consider the tax consequences and can, upon setting forth the factors considered, make an award or alternatively may remit to the trial court *(see, Majauskas v Majauskas,* 61 NY2d 481, 493-494). While it is desirable to consider tax consequences *(see, e.g., O'Brien v O'Brien, supra; Nolan v Nolan,* 107 AD2d 190), such consideration is not statutorily mandated in making an

equitable distribution award *(see,* Domestic Relations Law § 236 [B] [5] [d]). In any case, the parties should present the tax implications of their respective positions to the trial court so that, at the very least, the court will be familiarized with the potential tax consequences of the distribution it directs *(see,* Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:14 [1986 Supp Pamph], p 88). Upon a failure of the parties so to do, the court may develop a distribution plan without consideration of the tax laws. Because of counsel's understandable unawareness of recent changes in the tax law, we choose to exercise our discretion and consider the tax consequences. As matters now stand, defendant, when and if he sells the farm, will be required to pay the entire tax on the amount realized from the sale. While at first blush this might seem unduly burdensome and inequitable to defendant because plaintiff gets 40% of the value and pays no taxes, it must be remembered that she will not share in the increase in value, which is already of some significance, when and if the farm is sold. As current legislation has demonstrated, the tax laws are often subject to change and it is impossible to chart a course that will ensure the absence of any inequity. Hence, after reviewing all of the factors involved, we conclude that no change in Trial Term's distribution plan is necessary.

Lastly, we find no abuse of discretion in Trial Term's denial of plaintiff's cross motion for counsel fees. Plaintiff has already been awarded $8,000 in counsel fees and undeniably has funds with which to pay for representation *(see, Walsh v Walsh,* 92 AD2d 345).

Accordingly, the judgment and order should be affirmed.

Judgment and order affirmed, without costs. Kane, J. P., Main, Casey, Mikoll and Yesawich, Jr., JJ., concur.