ADELE ROSENSTOCK, Respondent-Appellant, v JEROME ROSEN-STOCK, Appellant-Respondent.

Third Department, July 14, 1988

## APPEARANCES OF COUNSEL

*Wallman & Kramer (David E. Pugh* and *Paul E. Loomie* of counsel), for appellant-respondent.

*Burton G. Rudnick* for respondent-appellant.

## OPINION OF THE COURT

MERCURE, J.

This action for a divorce was commenced on February 2, 1982. On June 14, 1984, Supreme Court granted reverse summary judgment in favor of plaintiff, and trial on the contested financial issues of equitable distribution, maintenance and counsel fees commenced January 2, 1985. Defendant is president of General Sportswear Company, Inc. (hereinafter General Sportswear), hub of a manufacturing organization whose primary business is the manufacture and sale of children's sportswear. Founded by defendant's father 65 years prior to trial, the corporation is run by defendant and his three brothers, who are each minority shareholders of the various entities[1] but collectively own nearly all shares. Defendant is also involved in Rosenstock Enterprises, an investment club formed with his brothers primarily to play the stock market. Plaintiff testified that she ceased her employment as a buyer of children's clothing upon marriage and frequently entertained General Sportswear clients and engaged in activities to enhance defendant's social standing in the community.

Plaintiff's expert witness, Walter L. Zweifler, valued defendant's interest in the business ventures at $5,600,000 as of the date of commencement of the action and approximately $6,000,000 at the time of trial. Stanley L. Goodman, defendant's expert witness, valued the property as of December 31, 1981 at $2,021,842 before taxes and $1,499,539 after taxes and as of December 31, 1983 at $3,080,961 before taxes and $2,362,554 after taxes. More than seven months after the trial concluded, plaintiff moved to reopen the proof. Supreme Court denied the motion.

Supreme Court found that defendant's interests in Bunn, Eastern and Outlet were marital property and that plaintiff should be paid $38,432 for her share, less a credit for defendant's home equity; that plaintiff owned 14,201 shares of Enterprise and 60 shares of General Sportswear as her separate property and that the balance of General Sportswear and its affiliates constituted defendant's separate property. The

---

1. These related enterprises include Bunn Manufacturing Company (hereinafter Bunn) and Devil Dog Manufacturing Company (hereinafter Devil Dog), both contract manufacturers of sportswear; Eastern Realty Company (hereinafter Eastern) and Southern Enterprises Corporation, lessors for Bunn and Devil Dog, respectively; Outlet, USA (hereinafter Outlet), which leases stores to sell goods; and Enterprise Factoring Corporation (hereinafter Enterprise), which factors for General Sportswear exclusively.

marital property was equally divided between the parties, requiring defendant to pay plaintiff approximately $700,000, one half of the value of various stocks, bonds, securities and investments. Supreme Court also ordered defendant to pay annual maintenance of $60,000 and counsel fees in the amount of $10,000. Both parties moved for an order modifying the decision, and both applications were denied. Defendant appeals and plaintiff cross-appeals.

■ Supreme Court identified and valued the nonbusiness marital property as of April 1, 1983 and valued the business marital property as of December 31, 1983. This constituted error. In *Lord v Lord* (124 AD2d 930), we held that "unless doing so would be patently inequitable, valuation of marital property is properly fixed at the commencement of the action" *(supra,* at 932). The utilization of the 1983 dates had the effect of including as marital property a checking account of $110,499, representing earnings of defendant after commencement of the action, clearly separate property. Moreover, other significant differences in the value of assets erroneously caused the "marital pot" to be increased by several hundred thousand dollars. No persuasive argument is made that it would be patently inequitable to value the marital property as of February 2, 1982, the date the divorce action was commenced.[2] It is thus necessary to remit this case to Supreme Court so that the appropriate date may be utilized.

■ Further, Supreme Court did not address any of the factors it was constrained to consider in determining the amount and duration of maintenance *(see,* Domestic Relations Law § 236 [B] [6] [a]) and briefly alluded to but a few of the requisite factors in making an equitable distribution of marital property *(see,* Domestic Relations Law § 236 [B] [5] [d]), thereby precluding intelligent appellate review. Mere enumeration of the factors considered *(see, Hornbeck v Hornbeck,* 99 AD2d 851) or brief allusion to a few factors *(see, Matter of Gulli v Gulli,* 118 AD2d 970) will not suffice. "While this deficiency may be overlooked where a comprehensive record and extensive factual findings provide a basis for informed review" *(supra,* at 971; *see also, Hornbeck v Hornbeck, supra; O'Sullivan v O'Sullivan,* 94 AD2d 407), that is not the case here. Therefore, although it is by no means our intention to

---

2. [1] Inasmuch as there was competent evidence of the extent and value of marital property as of December 31, 1981 and no proof of value as of February 2, 1982, the earlier date should be employed by Supreme Court.

impose additional burdens upon the trial Bench *(see, O'Sullivan v O'Sullivan, supra)* and recognizing that there may be a valid factual basis for Supreme Court's determinations, we must remit for analysis of the statutory factors. Upon remittal, Supreme Court should also consider the tax consequences involved in liquidating marital assets,[3] of particular importance due to the passage of time and change in the tax laws *(see, O'Brien v O'Brien,* 66 NY2d 576; *Nolan v Nolan,* 107 AD2d 190; *see also, Brennan v Brennan,* 124 AD2d 410) and, regarding maintenance, "should, with a view to the established living standard in [this] case, attempt to achieve equality so that at the least, neither spouse suffers more than the other" (Scheinkman, 1987 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:36, 1988 Pocket Part, at 22). The present award of maintenance to plaintiff shall continue until Supreme Court, upon remittal, renders a decision.

In light of the above, this appeal is held in abeyance and the matter remitted to Supreme Court for proceedings not inconsistent with our decision. Supreme Court shall file its findings with this court no later than September 1, 1988. We will, however, discuss several of the contentions of the parties to offer guidance to Supreme Court in its redetermination.

■ We agree that plaintiff was not entitled to share in the appreciation of defendant's separate property. Supreme Court properly found that plaintiff did not directly cause any increase in value in defendant's businesses and, further, that there was virtually no proof of causally related enhancement due to her indirect contributions. We also agree that plaintiff's savings of $18,910.25 in Dreyfus Liquid Assets was properly determined to constitute her separate property. However, Supreme Court's determination that plaintiff owned 14,201 shares of Enterprise, as separate property, is not supported by the record. Indeed, the parties both concede that these shares are marital property, and they should be distributed accordingly.

■ In light of the testimony adduced, Supreme Court did *not* abuse its discretion in relying primarily upon the opinion of defendant's expert witness in valuing defendant's interest

---

**3.** [2] Consideration of the tax consequences to each party was not statutorily mandated *(see,* Domestic Relations Law § 236 [B] [5] [d] [10]) until September 1, 1986 *(see,* L 1986, ch 884, § 3), some 20 months after the case was tried but 9 months before a judgment was entered.

in the various business enterprises. The trial court should be afforded great discretion in assessing the value of evidence. This is especially so here where plaintiff's expert witness acknowledged gaps in necessary information. Moreover, there is no uniform rule for valuing stock in closely held corporations *(Amodio v Amodio,* 70 NY2d 5, 7).

We conclude that Supreme Court did not abuse its discretion in denying plaintiff's motion to reopen several months after the proof had closed but before a decision had been rendered. As we view the record, plaintiff's "newly discovered evidence" appears to be, in various proportions, redundant, conclusory and irrelevant *(see, Suffolk Cement Prods. v State of New York,* 54 AD2d 804, 805; *Saracino v City of New York,* 30 AD2d 853, 854, *affd* 23 NY2d 938; *Knapp v Gougoen,* 24 AD2d 911).

The record reveals that plaintiff has sufficient funds to pay her own counsel fees. Thus, Supreme Court's award of $10,000 was an abuse of discretion *(see, McDougall v McDougall,* 129 AD2d 685, 686; *Baynon v Baynon,* 111 AD2d 733, 735; *Walsh v Walsh,* 92 AD2d 345, 347). Last, defendant should pay plaintiff for the value of 60 shares of General Sportswear, her separate property, as it would be ill-advised for plaintiff to retain the stock and thereby involve herself in the affairs of this closely held corporation *(see,* Domestic Relations Law § 236 [B] [5] [e]).

MAHONEY, P. J., CASEY, YESAWICH, JR., and LEVINE, JJ., concur.

Decision withheld, and matter remitted to the Supreme Court for further proceedings not inconsistent with this court's decision.