■ Laura Chasin, Respondent, v Milton Chasin, Appellant. —Weiss, P. J. Appeal from a judgment of the Supreme Court (Connor, J.) ordering, *inter alia,* equitable distribution of the parties' marital property, entered November 29, 1990 in Ulster County, upon a decision of the court.

This divorce action was commenced on November 13, 1987 and extensive pendente lite relief was granted by Supreme Court in an August 18, 1988 order. In an open court stipulation made on August 1, 1989, defendant's opposition to the divorce was withdrawn, plaintiff was given custody of the parties' two children, and the value of marital assets and

liabilities were agreed upon. In addition, the parties agreed to consult with each other concerning college selection for the children and related issues, and to submit disputes to arbitration. The case proceeded to trial on the issues of child support, maintenance, equitable distribution of marital property and counsel fees.

Following the trial, Supreme Court directed defendant to pay permanent maintenance, child support, health insurance premiums, uninsured medical/dental expenses and 78% of the children's college costs, and made an award of equitable distribution of the marital estate. Plaintiff was denied counsel fees. This appeal by defendant ensued.

Defendant is correct in his contention that the child support awarded is excessive and did not follow the mandates of the Child Support Standards Act (L 1989, ch 567). Without comment or reasoning, the flat percentage of 25% was applied against the parties' combined gross annual income of $166,763, including that which exceeded $80,000 (see, Domestic Relations Law § 240 [1-b] [c] [3]), allocating 78% as defendant's share and 22% as plaintiff's share. This was error (see, Quilty v Quilty, 169 AD2d 979, 980). The blind application of the statutory formula to the combined parental income over $80,000 without any express findings of the children's actual needs constitutes an abdication of judicial responsibility (see, Harmon v Harmon, 173 AD2d 98) and renders meaningless the statutory provision setting a cap on strict application of the formula (see, Domestic Relations Law § 240 [1-b] [c] [3]; Reiss v Reiss, 170 AD2d 589, 590, lv dismissed 78 NY2d 908; Quilty v Quilty, supra).

We find other fundamental flaws in the award of child support. Because shelter is inherent in the basic child support obligation, it was improper for Supreme Court to compel payment of the mortgage on the children's residence in addition to the formula standard without stating the reasons for deviating from the formula (see, Meyer v Meyer, 173 AD2d 1021). Nor are health insurance premiums proper add-ons to the basic child support obligation. The Child Support Standards Act provides that uninsured medical expenses be prorated between parents (see, Domestic Relations Law § 240 [1-b] [c] [5]). For these reasons, the award of child support as made must be set aside.

We also agree with defendant's contention that the equitable distribution award was erroneous. The record shows that Supreme Court acknowledged that Domestic Relations Law § 236 (B) (5) (d) provides a list of factors which must be

considered in an equitable distribution award. The court, however, failed to follow the statute by stating which factors it did consider or specifying the evidence upon which the award was based, other than a conclusory statement that it had considered the factors, the income of the parties and the duration of the marriage in awarding each party one half. Generally, such failures render an award erroneous *(see, Meyer v Meyer, supra; O'Sullivan v O'Sullivan,* 94 AD2d 407, 409; *see also, Rosenstock v Rosenstock,* 139 AD2d 164, 167). While this court has recently held that "[t]here is no rigid catechism which requires that a trial court parrot the words of the statute verbatim" *(Monette v Monette,* 177 AD2d 802, 803), we find no basis here upon which we may determine if there has been substantial compliance with the statute. We have held it to be sufficient when the court makes reference to the factors it did consider and states the reasons for its decision *(supra; see, Cappiello v Cappiello,* 66 NY2d 107, 110; *O'Brien v O'Brien,* 66 NY2d 576, 589). Here the court did neither. Moreover, granting prejudgment interest on the award to plaintiff was an abuse of discretion *(see, Ritz v Ritz,* 166 AD2d 568; *Schanback v Schanback,* 159 AD2d 498, *lv denied* 76 NY2d 703; *cf., Largiader v Largiader,* 151 AD2d 724; *Provosky v Provosky,* 124 AD2d 1068). The action moved promptly to trial[1] and the record fails to show prejudice to either party caused by delay chargeable to the other. The appreciation in value of the marital assets inured to both since the value of the marital estate was made as of the time of trial. The court's award of maintenance similarly fails to state the facts found by and the reasoning of the court *(see,* Domestic Relations Law § 236 [B] [6] [b]).

We have already held that the decision in this case fails to satisfy the statutory requirements and must be set aside. However, rather than remitting the matter for a new trial, this court is empowered to substitute a discretionary determination for that of Supreme Court provided we set forth the factors considered and the reasons for our decision *(see, Lo Muscio-Hamparian v Hamparian,* 137 AD2d 500, 501). With a full trial record before us, we opt to do so here in the interest of judicial economy. Since changes in child support, maintenance and equitable distribution of marital property in

---

1. A hearing on the unopposed divorce occurred on August 1, 1989. Notwithstanding that neither party filed a note of issue, the trial on the limited issues was held on November 2, 1989 and November 6, 1989. Supreme Court rendered its decision on November 2, 1990 and signed the judgment on November 16, 1990.

this case are interrelated and the modification of one may alter another, the three items should be addressed together *(see, Bizzarro v Bizzarro,* 106 AD2d 690, 692-693).

At the time of marriage, plaintiff was a college senior and defendant was in the fourth year of a graduate program at Pennsylvania College of Optometry. Neither was employed nor possessed of significant property. After graduation they moved to the City of Kingston, Ulster County, where plaintiff worked as a teacher and defendant as an optometrist. In 1971, defendant opened his own optometrical office and was assisted by plaintiff for two years during which she also continued to teach school. Her employment ended with the birth of their daughter on May 22, 1974. A second daughter was born on February 5, 1979.

The parties' joint efforts and contributions helped them to achieve their mutual success. Plaintiff was very active in political and civic affairs, serving in various offices of the County and State political party committees and becoming a town party chair and its delegate to national conventions. She has also served as a paid campaign coordinator and was twice elected to two-year terms as a County legislator. After the parties separated in 1987, plaintiff was employed by the State and earned approximately $37,000 at the time of trial.

Defendant's optometry practice thrived and his earnings increased from approximately $43,000 in 1982 to almost $100,000 (including taxable fringe benefits) in 1988. While the value of defendant's optometry practice is nonliquid and dependent upon his personal services, it is the source of the income upon which his ability to make payments of child support and maintenance depends. Defendant's future earning capacity will continue to substantially exceed that of plaintiff. Both parties are provided with the use of an automobile by their employers and both receive generous fringe benefits, including retirement and tax-favored health insurance programs.

In addition to earned income, both parties had other income. Plaintiff receives at least $3,700 annually in passive income and has approximately $18,000 in separate property. The bulk of defendant's 1988 additional income ($20,000 in interest and $7,500 in capital gains) comes from the 1987 installment sale of one half of his professional corporation.[2] The principal balance of $150,000 is being paid to him over

2. The parties stipulated to the full value of the corporation, $475,000, in the marital estate.

seven years ending in 1993. Plaintiff controls discretionary trust funds established by the children's grandparents valued at approximately $66,000 for each child, which while not appropriately used for the children's regular support (see, Guiry v Guiry, 159 AD2d 556, 557), are resources available for special opportunities and nonessential items such as private education and travel and should play a role in the choices for their higher education. To the degree that plaintiff's share of the marital property will enhance her income, it must be noted that two thirds of the distribution is not liquid (the marital home and pension benefit) and will not generate income in the near future. Recognition of the tax consequences on earned and passive income, child support, maintenance, distribution, pensions and appreciated property must be made, as well as the effect of determinations concerning such items upon cash flow. Defendant is 48 years old and plaintiff is 43 years old. All family members have good health. There are no unusual nonmonetary contributions to the children from either party nor are there unusual visitation expenses. Neither plaintiff, defendant nor the children have any special educational needs; defendant, however, does attend educational conferences paid for by the business and the children demonstrate high educational aptitudes and are obviously college bound. The older child is in boarding school and both attend summer overnight camp. They regularly receive private instruction in skiing, piano and tennis. As the sole custodial parent, plaintiff has a continued need and desire for occupancy of the marital residence and defendant has relocated.

The marital estate consisted of defendant's professional corporation for the practice of optometry ($475,000), defendant's pension fund ($74,000), the marital home ($190,000), the cash value of a life insurance policy ($23,000), a mortgage ($18,500), an individual retirement account ($5,000) and a Keogh plan ($27,000). Liabilities were debts against the house ($46,000) and a debt to the professional corporation ($23,000), leaving the net value of the marital estate at $743,500.[3]

We find that the equal division of the marital property is warranted (see, Ullah v Ullah, 161 AD2d 699, 700, lv denied 76 NY2d 704; Mele v Mele, 152 AD2d 685, 686) and will fairly equalize the parties' financial resources. Of the marital property totaling $743,500, each party is entitled to $371,750.

3. Supreme Court below used the figure of $742,500 as the net value of the marital estate, with one half of that being $371,250.

Plaintiff's share is to be distributed to her as follows: the marital residence, in kind, valued at $190,000 less the $46,000 mortgage to be assumed by plaintiff leaving the net value of $144,000; a "Qualified Domestic Relations Order" against defendant's pension valued at $100,000; and a distributive award of $127,750, payable in eight equal installments of $15,968.75 on the first day of each year without interest commencing in 1991. We decline to grant interest on plaintiff's distributive award as a balancing factor, recognizing that the $127,750 is liquid and free of tax consequences while defendant's share comprises the remainder of the marital property and is subject to deferred tax consequences and to the debt owed to the business. In addition, plaintiff's passive income will increase from the interest on the distributive installments if invested upon receipt. Her separate property, the tax-free child support and maintenance to be awarded herein, combined with her other income, will enable her and the children to live at the predivorce standard since the family is now reduced to three persons. Moreover, defendant should be able to maintain his predivorce standard of living without difficulty.

In light of the above, we set as the just and appropriate child support obligation of defendant as the noncustodial parent the sum of $400 per week plus 75% of reasonably necessary uninsured medical and health care expenses. Plaintiff shall provide group family health, dental and optical insurance covering the children, which is available from her employer. Resolution of the parties' respective responsibility for higher education must abide the college selection process. If the support ordered herein, when weighed with plaintiff's proportionate share of responsibility for higher educational expenses and plaintiff's noncollege-related child support expenses, should prove inadequate, appropriate application can be made for a modification to ensure that appropriate parental support is maintained. The modifications herein are effective retroactive to the date of the judgment of divorce of November 16, 1990, and not retroactive to the date of the pendente lite application, because the child support and maintenance set thereunder was adequate, was fairly made under the facts and circumstances then prevailing and reflect no inequities, and included substantial housing and transportation-related expenses which were unallocated between child support and maintenance (see, Meyer v Meyer, supra; Ritz v Ritz, supra). We further hold that defendant should maintain a $500,000 policy of insurance on his life during the period of

his child support and maintenance obligations naming plaintiff and the children as beneficiaries.

Finally, in determining the issue of maintenance, consideration must be given to plaintiff's ability to be self-supporting and to the amount necessary to achieve an approximation of the marital standard of living, as well as defendant's ability to provide for those needs while maintaining his own marital standard of living. Plaintiff's current salary together with the tax-free child support directed herein, her passive income from separate property and from the distributive award, when considered with the change in the household and adjusted for inflation, approaches her marital standard of living. Insofar as defendant is financially able to alleviate the remaining disparity, his maintenance obligation to plaintiff should be $100 per week for 10 years from November 16, 1990, the date of the divorce judgment, to terminate earlier in the event of plaintiff's remarriage or the death of either party.

Since defendant was denied a stay pending this appeal, he is entitled to credit for any payments made under the judgment which exceed those set forth herein.

Mikoll, Mercure, Crew III and Casey, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as awarded child support, maintenance and equitable distribution of the marital estate; awards on said issues are made as provided for in this court's decision; and, as so modified, affirmed.