OPINION OF THE COURT
Simons, J.
In this divorce action, the parties’ only asset of any consequence is the husband’s newly acquired license to practice medicine. The principal issue presented is whether that license, acquired during their marriage, is marital property subject to equitable distribution under Domestic Relations Law § 236 (B) (5). Supreme Court held that it was and accordingly made a distributive award in defendant’s favor.* It also granted defendant maintenance arrears, expert witness fees and attorneys’ fees (114 Mise 2d 233). On appeal to the Appellate Division, a majority of that court held that plaintiff’s medical license is not marital property and that defendant was not entitled to an award for the expert witness fees. It modified the judgment and remitted the case to Supreme Court for further proceedings, specifically for a determination of maintenance and a rehabilitative award (106 AD2d 223). The matter is before us by leave of the Appellate Division.
We now hold that plaintiff’s medical license constitutes *581 "marital property” within the meaning of Domestic Relations Law § 236 (B) (1) (c) and that it is therefore subject to equitable distribution pursuant to subdivision 5 of that part. That being so, the Appellate Division erred in denying a fee, as a matter of law, to defendant’s expert witness who evaluated the license.
I
Plaintiff and defendant married on April 3, 1971. At the time both were employed as teachers at the same private school. Defendant had a bachelor’s degree and a temporary teaching certificate but required 18 months of postgraduate classes at an approximate cost of $3,000, excluding living expenses, to obtain permanent certification in New York. She claimed, and the trial court found, that she had relinquished the opportunity to obtain permanent certification while plaintiff pursued his education. At the time of the marriage, plaintiff had completed only three and one-half years of college but shortly afterward he returned to school at night to earn his bachelor’s degree and to complete sufficient premedical courses to enter medical school. In September 1973 the parties moved to Guadalajara, Mexico, where plaintiff became a full-time medical student. While he pursued his studies defendant held several teaching and tutorial positions and contributed her earnings to their joint expenses. The parties returned to New York in December 1976 so that plaintiff could complete the last two semesters of medical school and internship training here. After they returned, defendant resumed her former teaching position and she remained in it at the time this action was commenced. Plaintiff was licensed to practice medicine in October 1980. He commenced this action for divorce two months later. At the time of trial, he was a resident in general surgery.
During the marriage both parties contributed to paying the living and educational expenses and they received additional help from both of their families. They disagreed on the amounts of their respective contributions but it is undisputed that in addition to performing household work and managing the family finances defendant was gainfully employed throughout the marriage, that she contributed all of her earnings to their living and educational expenses and that her financial contributions exceeded those of plaintiff. The trial court found that she had contributed 76% of the parties’ *582 income exclusive of a $10,000 student loan obtained by defendant. Finding that plaintiffs medical degree and license are marital property, the court received evidence of its value and ordered a distributive award to defendant.
Defendant presented expert testimony that the present value of plaintiffs medical license was $472,000. Her expert testified that he arrived at this figure by comparing the average income of a college graduate and that of a general surgeon between 1985, when plaintiffs residency would end, and 2012, when he would reach age 65. After considering Federal income taxes, an inflation rate of 10% and a real interest rate of 3% he capitalized the difference in average earnings and reduced the amount to present value. He also gave his opinion that the present value of defendant’s contribution to plaintiff’s medical education was $103,390. Plaintiff offered no expert testimony on the subject.
The court, after considering the life-style that plaintiff would enjoy from the enhanced earning potential his medical license would bring and defendant’s contributions and efforts toward attainment of it, made a distributive award to her of $188,800, representing 40% of the value of the license, and ordered it paid in 11 annual installments of various amounts beginning November 1, 1982 and ending November 1, 1992. The court also directed plaintiff to maintain a life insurance policy on his life for defendant’s benefit for the unpaid balance of the award and it ordered plaintiff to pay defendant’s counsel fees of $7,000 and her expert witness fee of $1,000. It did not award defendant maintenance.
A divided Appellate Division, relying on its prior decision in Conner v Conner (97 AD2d 88) and the decision of the Fourth Department in Lesman v Lesman (88 AD2d 153, appeal dismissed 57 NY2d 956), concluded that a professional license acquired during marriage is not marital property subject to distribution. It therefore modified the judgment by striking the trial court’s determination that it is and by striking the provision ordering payment of the expert witness for evaluating the license and remitted the case for further proceedings.
On these cross appeals, defendant seeks reinstatement of the judgment of the trial court. Plaintiff contends that the Appellate Division correctly held that a professional license is not marital property but he also urges that the trial court failed to adequately explain what factors it relied on in making its decision, that it erroneously excluded evidence of *583 defendant’s marital fault and that the trial court’s awards for attorneys and expert witness fees were improper.
II
The Equitable Distribution Law contemplates only two classes of property: marital property and separate property (Domestic Relations Law § 236 [B] [c], [d]). The former, which is subject to equitable distribution, is defined broadly as "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held” (Domestic Relations Law § 236 [B] [1] [c] [emphasis added]; see, § 236 [B] [5] [b], [c]). Plaintiff does not contend that his license is excluded from distribution because it is separate property; rather, he claims that it is not property at all but represents a personal attainment in acquiring knowledge. He rests his argument on decisions in similar cases from other jurisdictions and on his view that a license does not satisfy common-law concepts of property. Neither contention is controlling because decisions in other States rely principally on their own statutes, and the legislative history underlying them, and because the New York Legislature deliberately went beyond traditional property concepts when it formulated the Equitable Distribution Law (see generally, 2 Foster-Freed-Brandes, Law and the Family — New York ch 33, at 917 et set. [1985 Cum Supp]). Instead, our statute recognizes that spouses have an equitable claim to things of value arising out of the marital relationship and classifies them as subject to distribution by focusing on the marital status of the parties at the time of acquisition. Those things acquired during marriage and subject to distribution have been classified as "marital property” although, as one commentator has observed, they hardly fall within the traditional property concepts because there is no common-law property interest remotely resembling marital property. "It is a statutory creature, is of no meaning whatsoever during the normal course of a marriage and arises full-grown, like Athena, upon the signing of a separation agreement or the commencement of a matrimonial action. [Thus] [i]t is hardly surprising, and not at all relevant, that traditional common law property concepts do not fit in parsing the meaning of 'marital property’ ” (Florescue, "Market Value”, Professional Licenses and Marital Property: A Dilemma in Search of a Horn, 1982 NY St Bar Assn Fam L *584 Rev 13 [Dec.]). Having classified the "property” subject to distribution, the Legislature did not attempt to go further and define it but left it to the courts to determine what interests come within the terms of section 236 (B) (1) (c).
We made such a determination in Majauskas v Majauskas (61 NY2d 481), holding there that vested but unmatured pension rights are marital property subject to equitable distribution. Because pension benefits are not specifically identified as marital property in the statute, we looked to the express reference to pension rights contained in section 236 (B) (5) (d) (4) , which deals with equitable distribution of marital property, to other provisions of the equitable distribution statute and to the legislative intent behind its enactment to determine whether pension rights are marital property or separate property. A similar analysis is appropriate here and leads to the conclusion that marital property encompasses a license to practice medicine to the extent that the license is acquired during marriage.
Section 236 provides that in making an equitable distribution of marital property, "the court shall consider: * * * (6) any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party [and] * * * (9) the impossibility or difficulty of evaluating any component asset or any interest in a business, corporation or profession” (Domestic Relations Law § 236 [B] [d] [6], [9] [emphasis added]). Where equitable distribution of marital property is appropriate but "the distribution of an interest in a business, corporation or profession would be contrary to law” the court shall make a distributive award in lieu of an actual distribution of the property (Domestic Relations Law § 236 [B] [5] [e] [emphasis added]). The words mean exactly what they say: that an interest in a profession or professional career potential is marital property which may be represented by direct or indirect contributions of the non-title-holding spouse, including financial contributions and nonfinancial contributions made by caring for the home and family-
The history which preceded enactment of the statute confirms this interpretation. Reform of section 236 was advocated because experience had proven that application of the tradi *585 tional common-law title theory of property had caused inequities upon dissolution of a marriage. The Legislature replaced the existing system with equitable distribution of marital property, an entirely new theory which considered all the circumstances of the case and of the respective parties to the marriage (Assembly Memorandum, 1980 NY Legis Ann, at 129-130). Equitable distribution was based on the premise that a marriage is, among other things, an economic partnership to which both parties contribute as spouse, parent, wage earner or homemaker (id., at 130; see, Governor’s Memorandum of Approval, 1980 McKinney’s Session Laws of NY, at 1863). Consistent with this purpose, and implicit in the statutory scheme as a whole, is the view that upon dissolution of the marriage there should be a winding up of the parties’ economic affairs and a severance of their economic ties by an equitable distribution of the marital assets. Thus, the concept of alimony, which often served as a means of lifetime support and dependence for one spouse upon the other long after the marriage was over, was replaced with the concept of maintenance which seeks to allow "the recipient spouse an opportunity to achieve [economic] independence” (Assembly Memorandum, 1980 NY Legis Ann, at 130).
The determination that a professional license is marital property is also consistent with the conceptual base upon which the statute rests. As this case demonstrates, few undertakings during a marriage better qualify as the type of joint effort that the statute’s economic partnership theory is intended to address than contributions toward one spouse’s acquisition of a professional license. Working spouses are often required to contribute substantial income as wage earners, sacrifice their own educational or career goals and opportunities for child rearing, perform the bulk of household duties and responsibilities and forego the acquisition of marital assets that could have been accumulated if the professional spouse had been employed rather than occupied with the study and training necessary to acquire a professional license. In this case, nearly all of the parties’ nine-year marriage was devoted to the acquisition of plaintiff’s medical license and defendant played a major role in that project. She worked continuously during the marriage and contributed all of her earnings to their joint effort, she sacrificed her own educational and career opportunities, and she traveled with plaintiff to Mexico for three and one-half years while he attended medical school there. The Legislature has decided, by its *586 explicit reference in the statute to the contributions of one spouse to the other’s profession or career (see, Domestic Relations Law § 236 [B] [5] [d] [6], [9]; [e]), that these contributions represent investments in the economic partnership of the marriage and that the product of the parties’ joint efforts, the professional license, should be considered marital property.
The majority at the Appellate Division held that the cited statutory provisions do not refer to the license held by a professional who has yet to establish a practice but only to a going professional practice (see, e.g., Arvantides v Arvantides, 64 NY2d 1033; Litman v Litman, 61 NY2d 918). There is no reason in law or logic to restrict the plain language of the statute to existing practices, however, for it is of little consequence in making an award of marital property, except for the purpose of evaluation, whether the professional spouse has already established a practice or whether he or she has yet to do so. An established practice merely represents the exercise of the privileges conferred upon the professional spouse by the license and the income flowing from that practice represents the receipt of the enhanced earning capacity that licensure allows. That being so, it would be unfair not to consider the license a marital asset.
Plaintiff’s principal argument, adopted by the majority below, is that a professional license is not marital property because it does not fit within the traditional view of property as something which has an exchange value on the open market and is capable of sale, assignment or transfer. The position does not withstand analysis for at least two reasons. First, as we have observed, it ignores the fact that whether a professional license constitutes marital property is to be judged by the language of the statute which created this new species of property previously unknown at common law or under prior statutes. Thus, whether the license fits within traditional property concepts is of no consequence. Second, it is an overstatement to assert that a professional license could not be considered property even outside the context of section 236 (B). A professional license is a valuable property right, reflected in the money, effort and lost opportunity for employment expended in its acquisition, and also in the enhanced earning capacity it affords its holder, which may not be revoked without due process of law (see, Matter of Bender v Board of Regents, 262 App Div 627, 631; People ex rel. Greenberg v Reid, 151 App Div 324, 326). That a professional license has no market value is irrelevant. Obviously, a license may *587 not be alienated as may other property and for that reason the working spouse’s interest in it is limited. The Legislature has recognized that limitation, however, and has provided for an award in lieu of its actual distribution (see, Domestic Relations Law § 236 [B] [5] [e]).
Plaintiff also contends that alternative remedies should be employed, such as an award of rehabilitative maintenance or reimbursement for direct financial contributions (see, e.g., Kutanovski v Kutanovski, 109 AD2d 822, 824; Conner v Conner, 97 AD2d 88, 101, supra; Lesman v Lesman, 88 AD2d 153, 158-159, supra). The statute does not expressly authorize retrospective maintenance or rehabilitative awards and we have no occasion to decide in this case whether the authority to do so may ever be implied from its provisions (but see, Cappiello v Cappiello, 66 NY2d 107). It is sufficient to observe that normally a working spouse should not be restricted to that relief because to do so frustrates the purposes underlying the Equitable Distribution Law. Limiting a working spouse to a maintenance award, either general or rehabilitative, not only is contrary to the economic partnership concept underlying the statute but also retains the uncertain and inequitable economic ties of dependence that the Legislature sought to extinguish by equitable distribution. Maintenance is subject to termination upon the recipient’s remarriage and a working spouse may never receive adequate consideration for his or her contribution and may even be penalized for the decision to remarry if that is the only method of compensating the contribution. As one court said so well, "[t]he function of equitable distribution is to recognize that when a marriage ends, each of the spouses, based on the totality of the contributions made to it, has a stake in and right to a share of the marital assets accumulated while it endured, not because that share is needed, but because those assets represent the capital product of what was essentially a partnership entity” (Wood v Wood, 119 Misc 2d 1076, 1079). The Legislature stated its intention to eliminate such inequities by providing that a supporting spouse’s "direct or indirect contribution” be recognized, considered and rewarded (Domestic Relations Law § 236 [B] [5] [d] [6]).
Turning to the question of valuation, it has been suggested that even if a professional license is considered marital property, the working spouse is entitled only to reimbursement of his or her direct financial contributions (see, Note, Equitable Distribution of Degrees and Licenses: Two Theories Toward *588 Compensating Spousal Contributions, 49 Brooklyn L Rev 301, 317-322). By parity of reasoning, a spouse’s down payment on real estate or contribution to the purchase of securities would be limited to the money contributed, without any remuneration for any incremental value in the asset because of price appreciation. Such a result is completely at odds with the statute’s requirement that the court give full consideration to both direct and indirect contributions "made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker” (Domestic Relations Law § 236 [B] [5] [d] [6] [emphasis added]). If the license is marital property, then the working spouse is entitled to an equitable portion of it, not a return of funds advanced. Its value is the enhanced earning capacity it affords the holder and although fixing the present value of that enhanced earning capacity may present problems, the problems are not insurmountable. Certainly they are no more difficult than computing tort damages for wrongful death or diminished earning capacity resulting from injury and they differ only in degree from the problems presented when valuing a professional practice for purposes of a distributive award, something the courts have not hesitated to do (see, Arvantides v Arvantides, 64 NY2d 1033, supra; Litman v Litman, 93 AD2d 695, affd 61 NY2d 918, supra; Billington v Billington, 111 AD2d 203; Cohen v Cohen, 104 AD2d 841, appeal dismissed 64 NY2d 773; Nehorayoff v Nehorayoff, 108 Misc 2d 311). The trial court retains the flexibility and discretion to structure the distributive award equitably, taking into consideration factors such as the working spouse’s need for immediate payment, the licensed spouse’s current ability to pay and the income tax consequences of prolonging the period of payment (see, Internal Revenue Code [26 USC] § 71 [a] [1]; [c] [2]; Treas Reg [26 CFR] § 1.71-1 [d] [4]) and, once it has received evidence of the present value of the license and the working spouse’s contributions toward its acquisition and considered the remaining factors mandated by the statute (see, Domestic Relations Law § 236 [B] [5] [d] [1]-[10]), it may then make an appropriate distribution of the marital property including a distributive award for the professional license if such an award is warranted. When other marital assets are of sufficient value to provide for the supporting spouse’s equitable portion of the marital property, including his or her contributions to the acquisition of the professional license, *589 however, the court retains the discretion to distribute these other marital assets or to make a distributive award in lieu of an actual distribution of the value of the professional spouse’s license (see, Majauskas v Majauskas, 61 NY2d 481, 493, supra).
in
Three additional issues remain for our consideration.
First, plaintiff notes that the statute requires the trial court to state the factors it considered and the basis for its decision in making distribution and that neither the parties nor counsel may waive that requirement (see, Domestic Relations Law § 236 [B] [5] [g]). He contends that the court failed to adequately do so in this case. We have held recently that while section 236 (B) (5) (g) does not require the court to analyze each of the factors stated in subdivision (5) (d) and give reasons as to each, it still must set forth all the factors it considered and the reason for its decision (Cappiello v Cappiello, 66 NY2d 107, supra). Unless the trial judge reveals not only the factors he considered, but also his reasoning for the award made, intelligent review of the broad discretion entrusted to him is not possible.
The evidence before the trial court in this case supported its factual findings but its decision does not indicate what factors it considered, or the weight it attributed to them, in making the distributive award to defendant. Nevertheless, the Appellate Division has the same authority to make an award of marital property as does the trial court (see, Majauskas v Majauskas, 61 NY2d 481, supra), and it may effectuate the award and set forth the factors it considers determinative and the reasons for its decision or it may remit the matter to Special Term for that purpose if it is unable to do so (see, Kobylack v Kobylack, 62 NY2d 399).
Plaintiff also contends that the trial court erred in excluding evidence of defendant’s marital fault on the question of equitable distribution. Arguably, the court may consider marital fault under factor 10, "any other factor which the court shall expressly find to be just and proper” (Domestic Relations Law § 236 [B] [5] [d] [10]; see, Scheinkman, 1981 Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:13, pp 205-206 [1977-1984 Supp Pamphlet]). Except in egregious cases which shock the conscience of the court, however, it is not a "just and proper” *590 factor for consideration in the equitable distribution of marital property (Blickstein v Blickstein, 99 AD2d 287, 292, appeal dismissed 62 NY2d 802; see, Stevens v Stevens, 107 AD2d 987; Pacifico v Pacifico, 101 AD2d 709; McMahan v McMahan, 100 AD2d 826). That is so because marital fault is inconsistent with the underlying assumption that a marriage is in part an economic partnership and upon its dissolution the parties are entitled to a fair share of the marital estate, because fault will usually be difficult to assign and because introduction of the issue may involve the courts in time-consuming procedural maneuvers relating to collateral issues (see, Blickstein v Blickstein, supra, at p 292; McMahan v McMahan, supra, at p 827). We have no occasion to consider the wife’s fault in this action because there is no suggestion that she was guilty of fault sufficient to shock the conscience.
Finally, plaintiff contends that the trial court erred in allowing defendant an award of counsel fees and defendant contends the Appellate Division erred in deleting the trial court’s award of expert witness fees. The decision to award either expert witness fees or attorney’s fees lies, in the first instance, in the discretion of the trial court and then in the Appellate Division whose discretionary authority is as broad as the trial court’s is (see, Domestic Relations Law § 237 [a], [c]; Majauskas v Majauskas, 61 NY2d 481, 493-494, supra,). Because the Appellate Division’s affirmance of the award of counsel fees cannot be characterized as an abuse of discretion as a matter of law, the issue is beyond our review (see, Majauskas v Majauskas, supra, at p 494; Patron v Patron, 40 NY2d 582). Its decision to delete the award of expert fees, as a matter of law, was apparently based on the fact that the expert’s testimony was directed solely to the value of plaintiff’s license, evidence that was unnecessary in view of its determination that the license was not marital property. We have concluded that the license is marital property, however, and on remand the court may exercise its discretion to determine whether an award of expert fees is warranted and if so their proper amount (see, Litman v Litman, 61 NY2d 918, supra).
Accordingly, in view of our holding that plaintiff’s license to practice medicine is marital property, the order of the Appellate Division should be modified, with costs to defendant, by reinstating the judgment and the case remitted to the Appellate Division for determination of the facts, including the exercise of that court’s discretion (CPLR 5613), and, as so *591 modified, affirmed. Question certified answered in the negative.

 The action was originally instituted by plaintiff husband and defendant wife asserted a counterclaim in her answer. Subsequently, the husband withdrew his complaint and reply to the counterclaim and the wife received an uncontested divorce.