UNITED STATES of America

v.

Joyce FERRARA, Carolyn McGuire and Jose Nine–Curt, Defendants.

No. 88 CR 218.

United States District Court, E.D. New York.

July 27, 1988.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. (Ruth Nordenbrook, Asst. U.S. Atty., of counsel), Ronda C. Lustman, Asst. Atty. Gen., State of N.Y., for plaintiff.

Marion Bachrach, Summit Rovins & Feldesman, Jonathan Marks, Power, Weiss & Marks, New York City, for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendants move for an order dismissing the indictment. For the reasons discussed below, the motion is granted in part and denied in part.

## FACTS

### I. BACKGROUND

To comprehend the charges in this indictment one must first understand the process of licensing doctors who have graduated

from medical schools that are not accredited by the Liaison Committee of Medical Evaluation ("LCME").[1]

To obtain a New York license to practice medicine, an applicant, at a minimum, must have completed at least 32 months of medical school training and have earned a medical doctor ("M.D.") degree or its equivalent from that school. If the medical school is nonaccredited, then the applicant, in addition, must work for three years as a resident in an American hospital. To become a resident, however, the applicant must first obtain a certificate from the Educational Commission for Foreign Medical Graduates ("ECFMG"), a not-for-profit corporation that administers an examination designed to assess the English proficiency and medical knowledge of graduates of nonaccredited medical schools planning to participate in residencies in American hospitals. Upon successful completion of the ECFMG exam, an ECFMG certificate for the graduate is issued.

To take the ECFMG exam, the graduate must complete an application, which includes a sworn statement that the applicant understands that the ECFMG certificate and all copies thereof are the property of the ECFMG and must be returned to the ECFMG if it determines that the applicant is ineligible or that the certificate was otherwise issued in error.

Because curricula in nonaccredited programs are not uniform, applications for New York licensure from graduates of nonaccredited medical schools are scrutinized more carefully by the New York State Education Department ("NYSED") than graduates from accredited medical schools. Although NYSED requires graduates of nonaccredited medical schools to submit their ECFMG certificate to obtain a New York State license, the NYSED does not rely on ECFMG to certify the applicant's training or credentials. Instead, the NYSED requires applicants to submit substantial documentation of their premedical and medical education, including diplomas and transcripts. If the applicant has received transfer credits from another foreign medical school, the NYSED also requires further documentation of the *bona fides* of the applicant's work from that predecessor medical school. In addition, where a part of the applicant's medical school training consisted of clinical rotations at hospitals, he or she must present verification thereof.

## II. UNIVERSIDAD CENTRO de ESTUDIOS TECNOLOGICOS AND C.J. INSTITUTE

### A. *Introduction*

In January 1980, the Universidad Centro de Estudios Tecnologicos ("UCETEC"), a private educational institution located in the Dominican Republic, opened its medical school. Defendant Nine–Curt, an American M.D. who is licensed to practice in Missouri and Puerto Rico, was named its associate dean.

Defendants Ferrara and McGuire are principals and officers of C.J. Institute ("C.J."), a New York corporation with offices in Brooklyn. The primary business of C.J. is a service specializing in the placement and assistance of individuals interested in obtaining an M.D. degree from a foreign medical school, particularly in the Dominican Republic. In addition, C.J. offers its clients such ancillary services as helping them obtain letters of admission, letters of good standing, transcripts and other necessary documents from foreign medical schools; helping clients transport documents, tuition and other required fees to and from the Dominican Republic; assisting them in obtaining clinical clerkships in American hospitals; offering review courses for the ECFMG examination; and assisting clients in obtaining medical malpractice insurance during their clinical rotations.

### B. *The Indictment*

The indictment charges the three defendants with conspiracy to commit mail fraud, 18 U.S.C. § 371, and two counts of mail fraud, 18 U.S.C. § 1341.

The conspiracy count alleges that the defendants conspired to use the mails for

---

**1.** Accredited medical schools are located "almost exclusively" in the United States and Canada. Government's Memorandum of Law in Opposition at 6.

the purpose of executing a scheme to defraud the ECFMG, medical institutions, the NYSED and other licensing authorities, and the patient public, and to obtain property from those defrauded. Indictment ¶ 11. As alleged, the objects of the conspiracy included: (1) causing the date of UCETEC admissions to be falsely recorded in UCETEC records and causing falsely dated UCETEC letters of admission and good standing to be issued to and on behalf of defendants' co-conspirators (the student-applicants), *id.* ¶ 12; (2) presenting the false and fraudulent UCETEC admission and good standing letters to hospitals to support efforts by their co-conspirators to obtain clinical rotations at the hospitals, *id.* ¶ 13; (3) preparing and causing to be prepared UCETEC transcripts that reflected that the co-conspirators who were CJ clients had completed the requisite four semesters of basic science training at UCETEC when defendants knew that these co-conspirators had not completed this training at UCETEC (and in some cases, had not completed this training at any medical school), *id.* ¶ 14; (4) making false statements to ECFMG to enable the co-conspirators to take the ECFMG examination and obtain the ECFMG certificate, *id.* ¶ 15; and (5) making misrepresentations and purposely ommitting material information concerning the medical school training of the co-conspirators in documents submitted to hospitals offering a program of clinical rotations to students of foreign medical schools, *id.* ¶ 16. The conspiracy count further alleges 14 overt acts. The mail fraud counts contain the substantive charges.

The defendants move to dismiss the indictment, arguing that the alleged scheme to defraud lacks the key element of a cognizable property interest, which is required under *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), to constitute the crime of mail fraud. They also move to dismiss the indictment on the ground of insufficiency.

## DISCUSSION

## I. THE GOVERNING LAW

The mail fraud statute, 18 U.S.C. § 1341, provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purposes of executing such scheme or artifice or attempting so to do [uses the mails or causes them to be used, shall be guilty of a crime]."

The indictment charges four separate property interests fraudulently obtained by the defendants: (1) medical residency salaries paid by hospitals; (2) fees paid by the patient public; (3) certificates of qualification issued by the ECFMG; and (4) licenses to practice medicine issued by state medical licensing authorities.

In *McNally, supra,* the Supreme Court significantly narrowed the reach of § 1341. *McNally* held that the mail fraud statute does not protect the deprivation of "the intangible right of the citizenry to good government," *id.* 107 S.Ct. at 2879, but rather is "limited in scope to the protection of property rights." *Id.* at 2881. As later explained in *Carpenter v. United States*, —— U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), "*McNally* did not limit the scope of § 1341 to tangible as distinguished from intantible property rights." *Id.* 108 S.Ct. at 320. The Court concluded that confidential business information, which "has long been recognized as property," *id.,* was within the reach of the mail fraud statute, notwithstanding its intangible nature. *Id.* at 321–22; *see also United States v. Grossman*, 843 F.2d 78, 86 (1988) (law firm has a property interest in its confidential information).

With these principles in mind, I turn now to the property interests implicated here.

## II. THE ALLEGED PROPERTY INTERESTS

### A. *Medical Residency Salaries Paid by Hospitals and Fees Paid by the Patient Public*

The *McNally* Court did not alter the ancient thrust of the mail fraud statute, which is to "protect ... people from

schemes to deprive them of their money or property." *McNally, supra,* 107 S.Ct. at 2879. As defendants concede, *see* Defendants' Memorandum of Law at 10, what constitutes property must be determined through the eyes of the victim of the alleged fraud. *See Carpenter, supra,* 108 S.Ct. at 321–22; *United States v. Evans,* 844 F.2d 36, 39 (2d Cir.1988); *Grossman, supra,* 843 F.2d at 86. There simply is nothing intangible about the property interests here. Salaries paid by hospitals and fees paid by patients represent "the most concrete and tangible of property"—money. *United States v. Meyerson,* No. 87 CR 796, slip op. at 5 (S.D.N.Y. June 21, 1988) (JFK) [1988 WL 68143]. Accordingly, these alleged property deprivations are cognizable under § 1341.

### B. *Licenses to Practice Medicine Issued by State Licensing Authorities*

■ Although a license to practice medicine is a significant property interest of the licensed physician, *see O'Brien v. O'Brien,* 66 N.Y.2d 576, 586, 498 N.Y.S.2d 743, 748, 489 N.E.2d 712, 717 (1985), for purposes of the mail fraud statute, the license can be deemed property only if it has a value to the alleged victim—here, the state licensing authorities.

The government, arguing that the court must examine the nature of the license, points out the requirements for obtaining the license, the terms of its continued validity, and the function and purpose of the state's regulatory scheme. The court is unable, however, to discern a cognizable *property* interest of which the state could be defrauded. Each of the issues raised by the government suggests "that the government's interest here is ancillary to regulation, not to property." *Evans, supra,* 844 F.2d at 42. This type of regulatory interest has been found to fall outside the reach of the mail fraud statute. *See id.* (federal government's right to control foreign resales of arms not a cognizable property interest); *United States v. Murphy,* 836 F.2d 248, 253–54 (6th Cir.1988) (state's

"right to accurate information with respect to its issuance of bingo permits" not a cognizable property interest); *Medical, Inc. v. Angicor, Inc.,* 677 F.Supp. 1000, 1005 (D.Minn.1988) (Food and Drug Administration's interest in approving exports is "a method used by the FDA to protect the consuming public abroad" and not a cognizable property interest); *cf. United States v. Ianniello,* 677 F.Supp. 233, 234–35 (S.D.N.Y.1988) (conviction for fraudulently obtaining state liquor license infirm on a motion pursuant to 28 U.S.C. § 2255 because "the deprivation of intangible rights" was part of an overall "scheme to defraud for pecuniary gain"). Although *Evans* left open the question whether the government ever "has a property interest in the limits it imposes on property use," *Evans, supra,* 844 F.2d at 42, the court, mindful that the mail fraud statute should now be construed narrowly, *id.* at 41, is hard-pressed to find that it exists here. Accordingly, the court must conclude that a license to practice medicine issued by state licensing authorities is not a cognizable property interest for purposes of § 1341.

### C. *Certificates of Qualification Issued by the ECFMG*

■ Falling somewhere in between the other alleged property interests discussed above, are the certificates of qualification issued by ECFMG.

The government argues that the certificates fall into the category of protected intangible property rights found in *Carpenter* and *Grossman.* It maintains that, although the ECFMG is a not-for-profit organization and although the certificate itself has no calculable dollar value, the certificates are the work-product (and, indeed, the sole product) generated by the ECFMG. Since the certification is relied upon by hospitals and state licensing boards, the integrity of the certificates—which forms the basis of the organizations' reputation—is a property interest of the ECFMG. Moreover, the application for the certificate contains a legend that the certificate is at

all times property of the ECFMG.[2] Thus, the government argues that the integrity of the certificates is sufficiently analgous to the confidential business information in *Carpenter* and *Grossman* to fall within § 1341.

I disagree. Unlike *Carpenter* and *Grossman,* this case does not involve the use or misuse of confidential or exclusive information by a fiduciary of the one defrauded. Rather, what was allegedly defrauded here—by persons who had no fiduciary relationship with the ECFMC—was a certificate, which the government claims is a tangible symbol of the ECFMG's reputation.

In *Evans,* the Second Circuit stated that although what can be defined as "property" for one purpose cannot always be "transported" into different context, *Evans, supra,* 844 F.2d at 40, the fact that a right "at issue has not been treated as a property right in other contexts, and that there are many basic differences between [the right at issue] and common law property are relevant considerations in deciding whether the right is property under the federal fraud statutes." *Id.* at 41.

In this regard, the government makes no attempt to demonstrate that one's reputation is a recognized property interest either under common law or as construed in contexts other than the mail fraud statute. The Court notes, however, that while one can be compensated under the law for injury to one's reputation, *see Time, Inc. v. Firestone,* 424 U.S. 448, 460, 96 S.Ct. 958, 968, 47 L.Ed.2d 154 (1976), that compensation is not based on an injury to what has commonly been known as "property." *See Paul v. Davis,* 424 U.S. 693, 711–712, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976) (reputation is not property for purposes of 42 U.S.C. § 1983). *Compare* N.Y.Gen. Constr.L. § 25–b (McKinney 1988) (defining injury to property to exclude personal injury) *with id.* § 37–a (defining personal inju-

ry to include libel and slander) *and Bonilla v. Reeves,* 49 Misc.2d 273, 279, 267 N.Y.S.2d 374, 381 (N.Y.Co.1966) (construing § 37–a to include injury to one's reputation). Given the facts that distinguish this case from *Carpenter* and *Grossman*—the absence of both EFCMG's commercial interest in the certificate[3] and a fiduciary relationship between the defendants and ECFMG, and the fact that the certificate is neither confidential nor exclusive—leads this court to conclude that on a scale of intangible rights, reputation is as ephemeral as the right to honest and impartial government. Moreover, I cannot discern any meaningful distinction between the EFCMG's certificate and the NYSED's license. Indeed, if one's reputation—standing alone—could be construed as property, then any ordinary defamation action could be brought under the mail fraud statute—a startling proposition.

In sum, I conclude that the ECFMG certificate is not a property interest cognizable under the federal mail fraud statute.

## III. THE SUFFICIENCY OF THE ALLEGATIONS REGARDING THE TWO REMAINING VICTIMS: THE PATIENT PUBLIC AND MEDICAL INSTITUTIONS

The defendants also argue that with respect to the two remaining victims of the alleged fraud, the indictment (1) fails to meet the requirements of the sixth amendment and Fed.R.Crim.P. 7(c); and (2) has been substantially altered in violation of their fifth amendment right to be tried only on a charge voted by the grand jury. Neither of these arguments has merit. It is well-settled law that

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of further prosecution for the same offense."

---

**2.** At oral argument, the government abandoned this latter theory and argued that the certificate itself was not the property defrauded, but rather that the certificate is a tangible symbol of ECFMG's intangible reputation.

**3.** The ECFMG is not only a non-profit organization, it is the only entity that administers a standardized exam for graduates of nonaccredited medical schools.

*Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). "An indictment need only track the language of the statute and, if necessary to apprise the defendant 'of the nature of the accusation against him,' ... state time and place in approximate terms." *United States v. Bagaric,* 706 F.2d 42, 61 (2d Cir.) (quoting *Russell v. United States,* 369 U.S. 749, 765, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962)), *cert. denied,* 464 U.S. 840, 104 S.Ct. 134, 78 L.Ed.2d 128 (1983).

*United States v. Covino,* 837 F.2d 65, 69 (2d Cir.1988); *see United States v. Pagan,* 721 F.2d 24, 27 (2d Cir.1983); *United States v. Tramunti,* 513 F.2d 1087, 1113 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

Paragraph 11 of the indictment charges as follows:

> Commencing on or about and between January 1, 1981 and December 31, 1984, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOYCE FERRARA, CAROLYN MCGUIRE and JOSE NINE–CURT, did unlawfully, wilfully and knowingly combine, conspire, confederate and agree with one another and with others known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1341, by conspiring to use the mails and to cause the mails to be used for the purpose of executing a scheme and artifice to defraud the ECFMG, medical institutions, the NYSDE and other medical licensing authorities, and the

patient public of the State of New York and other states, to wit: certificates from the ECFMG, salaried residencies in medical institutions, licenses to practice medicine in the State of New York and elsewhere from the NYSDE and other medical licensing authorities in the United States, and medical fees from the patient public of the State of New York and other states.

Fourteen overt acts of the conspiracy are detailed fully in ¶ 17 of the indictment. The deletion of the NYSED and the ECFMG as alleged victims does not render the indictment insufficient. *See United States v. Ochs,* 842 F.2d 515, 527–28 (1st Cir.1988) (vacating conviction in light of *McNally* but upholding indictment that alleged two valid mail fraud schemes and remanding for new trial). These paragraphs meet or exceed the requirements necessary to fairly advise the defendants of the charges. Counts 2 and 3, the substantive mail fraud counts, are similarly sufficient.[4] *See United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir.1984) (mail fraud counts detailing conduct in furtherance of scheme sufficient).

██ Finally, defendants argue that the indictment has been substantially altered in violation of their fifth amendment right to be tried on a charge voted by the grand jury.

The government readily admits that at the inception of its investigation into the charges against these defendants in 1984, it focused primarily on the fraud allegedly perpetrated on the NYSED and the ECFMG. However, when *McNally* and la-

---

4. Counts 2 and 3 charge:

In or about and between January 1980 and December 1984, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOYCE FERRARA, CAROLYN MCGUIRE AND JOSE NINE–CURT, together with others, known and unknown to the grand jury did knowingly and wilfully devise a scheme and artifice to defraud the ECFMG, medical institutions, the NYSDE and other medical licensing authorities, and the patient public of the State of New York and other states, and to obtain property from the ECFMG, medical institutions, the NYSDE and other medical

licensing authorities and the patient public of the State of New York and other states. The object of this scheme was to enable the co-conspirator clients of CJ to obtain an ECFMG certificate, to obtain salaried residencies in medical institutions, to gain admission to the practice of medicine in the State of New York and elsewhere, and to obtain medical fees from the patient public of the State of New York and other states.

Indictment ¶ 19. Paragraph 20 specifies the mailings made in furtherance of the alleged scheme. Again, the redaction of the NYSED and the ECFMG as alleged victims does not render this charge insufficient.

ter *Evans* were decided, the government, in anticipation of the problem presented in this motion, added the patient public and hospitals as additional victims of the alleged fraud.

Although this procedure would have been unconstitutional had the grand jury handed up its indictment before the government changed its strategy, *United States v. Miller*, 471 U.S. 130, 144–45, 105 S.Ct. 1811, 1819–20, 85 L.Ed.2d 99 (1985), such is not the case here. This indictment was returned by a properly impanelled grand jury. As defendants concede, *see* Bachrach Affidavit, ¶¶ 6–7 (noting that presentation of the proposed indictment to the grand jury was adjourned while the government changed strageties), it has not been altered or amended since that time. No new allegations have been added nor was the indictment broadened in any way since the grand jury returned it. It is clear from the face of the indictment that questions of residency salaries and patient fees were considered by the grand jury. What defendants quarrel with is the broadening of the scope of the charges *before* the evidence was presented to the grand jury—an argument that boils down to whether the indictment was returned in the absence of adequate or competent evidence. This type of challenge to an indictment has historically been rejected. *See United States v. Contreras*, 776 F.2d 51, 54 (2d Cir.1985) (citing *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956)). It is similarly rejected here.

## CONCLUSION

Accordingly, defendants' motion to dismiss the indictment on the ground that the alleged scheme to defraud lacks a cognizable property interest is granted only insofar as the scheme to defraud involves the NYSED and the ECFMG. Defendants' motion to dismiss on the ground that the indictment is insufficient and constitutionally defective is denied.

SO ORDERED.