(dissenting). However it may be characterized, the majority holds that under Domestic Relations Law § 236 (B) (1) (c) neither a separation action nor a separation judgment dissolves the marital economic partnership so as to terminate the accrual of marital assets for equitable distribution (see, majority opn, at 556-557). Thus, even though the marriage relationship has deteriorated to the point where one party has sued for and even obtained "a judgment separating the parties from bed and board, forever, or for a limited time” (Domestic Relations Law § 200), the individual assets of the husband and wife continue to be lumped together for eventual distribution as marital property when the marriage is finally dissolved. The majority’s holding that the "economic partnership” survives the discord of a separation action is incompatible with the well-defined concept of the "economic partnership” relationship as the centerpiece of the Equitable Distribution Law (see, Price v Price, 69 NY2d 8, 14; O’Brien v O’Brien, 66 NY2d 576, 585; Majauskas v Majauskas, 61 NY2d 481, 489).
"Economic partnership” is not some abstract state which is deemed to exist by virtue of the marriage contract. On the contrary, "economic partnership” is a specific conception of the marriage relationship which the Legislature has adopted as a fair and realistic basis for the division of property when the marriage terminates. It is a practical concept reflecting the trust, the interdependence and the voluntary sharing of the obligations of supporting, maintaining and nurturing the family which exist when the parties function together as an economic unit. The idea reflects what married people living together actually do and how they function when operating as *560 an economic unit, not some theoretical notion of how married but separated people might function if they were not separated. Because the majority opinion is predicated on a novel theory of ’’economic partnership” which is contrary to established precedent, antithetical to the essential basis of equitable distribution and inconsistent with the plain language and practical sense of the statute, I dissent.
I.
In O’Brien v O’Brien (supra, at 584-585), we explained that in enacting part (B) of Domestic Relations Law §236 the Legislature replaced the traditional common-law title theory of property with an entirely new theory — equitable distribution. Citing the Governor’s Memorandum of Approval,[1] we emphasized that ”[e]quitable distribution was based on the premise that a marriage is, among other things, an economic partnership to which both parties contribute as spouse, parent, wage earner or homemaker” (id., at 585 [emphasis added]). In O’Brien, the husband’s professional medical license was held to be marital property because the wife helped support him financially and emotionally while he studied for the license (id., at 585-586). The economic partnership idea as the basis of equitable distribution was further refined in Price v Price (69 NY2d 8, supra), where we noted that the concept ’’reflects an awareness that the economic success of the partnership depends ’not only upon the respective financial contributions of the partners, but also on a wide range of nonremunerated services to the joint enterprise, such as homemaking, raising children and providing the emotional and moral support necessary to sustain the other spouse in coping with the vicissitudes of life outside the home’ ” (id., at 14 [quoting Brennan v Brennan, 103 AD2d 48, 52]). In Price we held that where a separately owned company had appreciated during the marriage ’’due in part” to the contributions of the nontitled spouse in homemaking and attending business conventions with her husband, the appreciation constituted marital property (id., at 17; see also, Majauskas v Majauskas, supra, at 488-490 [vested pension rights held to be marital property on economic partnership theory]).
The majority finds a sufficient ground for the economic partnership and the continued accrual of marital property in *561 the legal existence of the marriage irrespective of the actual relationship of the parties. In this holding, the majority ignores the teachings of Price, O’Brien and Majauskas and creates a troubling precedent which cuts against the very purpose of equitable distribution[2] — i.e., a fair distribution of only that property which the parties accumulated during the marriage as a result of their joint, cooperative endeavors. Thus, under today’s decision, a married couple (such as the parties here) may live separate and apart for years after commencement of a separation action and the grant of a decree; their affection for each other and the mutual trust and respect necessary for the sharing of marital obligations may have long since vanished; yet, the economic partnership will be deemed to have continued and their individual assets will be pooled for eventual distribution as marital property.
The sole aim of replacing the rigid and sometimes unjust common-law property doctrines used in the division of marital property with a new system of equitable distribution was greater fairness to the parties on dissolution of the marriage. Clearly, that aim is achieved by the lumping together for distribution what is accumulated while the parties actually function as and contribute to an economic unit. For then it is appropriate and fair that individual property interests should give way and that in making the equitable distribution, the Court should recognize "the value of 'non-remunerated services’ such as homemaking” and "consider any 'contributions and services as a spouse, parent * * * and homemaker’ ” (Price v Price, supra, at 14-15 [quoting Domestic Relations Law § 236 (B) (5) (d) (6)]). It is difficult at best to understand, nor does the majority explain, how the aim of fairness is furthered —or any legitimate purpose, for that matter — by ignoring the realities of the marital relationship and ordering the continued merging of the marital assets after the parties have legally separated and after any basis for an actual economic partnership has ceased to exist (see, Florescue, The Cutoff to *562 Accrual, NYU, Aug. 10, 1992, at 3, cols 1, 2 [“The statutory goal (of the Equitable Distribution Law) is to distribute 'equitably’ the fruits of the marital partnership, Once that partnership has ceased to exist, its fruits should too”]).
II.
That the mixing of the parties’ individual assets as marital property should cease when a separation action is started or a decree obtained is dictated by the plain wording as well as the sense of the statute. Under the Equitable Distribution Law, “marital property” is defined as “all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action” (Domestic Relations Law § 236 [B] [1] [c] [emphasis added]). Domestic Relations Law § 236 (B) (2), entitled “Matrimonial actions”, states that "[e]xcept as provided in [Domestic Relations Law § 236 (B) (5)], the provisions of this part shall be applicable to actions for * * * a separation” (emphasis added). The logic of the statutory scheme is clear: to constitute marital property for equitable distribution upon final dissolution of the marriage, the property of the individual partners must be acquired during the marriage and before steps are taken which signify the breakup of the marital partnership.
It is, of course, a basic rule of construction that “statutory language is generally given its natural and most obvious meaning” (Price v Price, supra, at 15 [citing McKinney’s Cons Laws of NY, Book 1, Statutes § 94]). Yet, the majority rejects the directive of the statute from its plain wording: that marital property should not continue to accrue after "the commencement of a matrimonial action” (§236 [B] [1] [c] [emphasis added]) and that by the terms of the statute an action “for a separation” is a matrimonial action (§ 236 [B] [2]).
It is also a basic rule that an interpretation of a statute should be rejected if it produces a result which is unreasonable or unfair (see, Ferres v City of New Rochelle, 68 NY2d 446, 454; McKinney’s Cons Law of NY, Book 1, Statutes §§ 141, 143, 146). Here, the result of the majority’s construction is both unreasonable and unfair — a party’s individual property will be included in the mix of assets as marital property even after the marriage is a “dead marriage”, after the parties have ceased to function as an economic unit and after the actual marital partnership no longer exists.
*563 Moreover, the majority construction produces an anomaly. Section 236 (B) (1) (c) provides that both the execution of a separation agreement and the commencement of a matrimonial action have the effect of cutting off the accrual of marital property. Yet, under the majority decision, neither the commencement of a separation action nor even the filing of a separation decree stops the accruing of marital property— although a separation, if pursuant to an agreement, concededly has that effect (see, Milbrandt v Green Refractories Co., 79 NY2d 26, 36 [a construction which produces an anomaly should be avoided]). Here, for example, the parties lived apart, after commencement of the separation action, under a temporary order and, later, under the separation decree which contained provisions for maintenance and exclusive possession of the house. Under the majority decision, until the divorce action was commenced whatever additional assets that the parties acquired after separation are treated as marital property. If the parties had separated pursuant to an agreement containing the same terms as in the temporary order and separation decree, their individual assets would not be treated as marital property. In both the actual as well as the assumed case, the fact of separation dispels any possibility of the ongoing cooperation and sharing of the mutual obligations on which the economic partnership is based. No reason is suggested for these conflicting results. To be sure, a separation agreement implies that the separation was voluntary, even amicable, while a separation action bespeaks an involuntary separation, one that may be fraught with bitter marital strife. If anything, such involuntary separation seems even more antagonistic to the concept of the economic partnership than a separation under an agreement.
The majority offers no reason as to how its decision furthers the underlying purpose of the Equitable Distribution Law— i.e., distributing property resulting from the economic partnership. Rather, it stresses the point made by the Appellate Division (173 AD2d 133, 135) that actions to declare the nullity of a foreign divorce and for the validity of a marriage —both assertedly presupposing the "continued existence” of the marriage — are included as "matrimonial actions” in section 236 (B) (2). Thus, it is argued, little significance should be attached to the inclusion of separation actions in that same section. No authority is cited for the majority’s proposition that an action to nullify a foreign divorce or to declare a marriage valid is necessarily one brought for " 'the continued *564 existence of the marital relationship’ ” (majority opn, at 556 [quoting Anglin v Anglin, 173 AD2d 133, 135, supra]). Certainly, the fact that the parties have had to resort to litigation over some disputed issue suggests that whatever marriage might continue will be less than amicable. But, in any event, the argument overlooks the critical point: that it is the existence of the economic partnership, not of the marriage as a legal entity, on which the accrual of marital property and the very concept of equitable distribution are based.
Judges Kaye, Titone and Smith concur with Judge Bellacosa; Judge Hancock, Jr., dissents and votes to reverse in a separate opinion in which Acting Chief Judge Simons concurs.
Order affirmed, etc.

. Governor’s Mem of Approval, 1980 McKinney’s Session Laws of NY, at 1863; see also, Assembly Mem, 1980 NY Legis Ann, at 129-130.

, A large body of law has developed around the concept "economic partnership” as the basis for marital property (see, e.g., Finocchio v Finocchio, 162 AD2d 1044; Fish v Fish, 161 AD2d 979; Dzembo v Dzembo, 160 AD2d 1144; Smith v Smith, 154 AD2d 365; Anderson v Anderson, 153 AD2d 823; Mahlab v Mahlab, 143 AD2d 116; Behrens v Behrens, 143 AD2d 617; Rider v Rider, 141 AD2d 1004; Josan v Josan, 134 AD2d 486; Clerk v Clerk, 132 AD2d 456; see also, Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:4-C236B:8, at 191-223).