[614 NYS2d 775]

Dee Ann H. Martin, Respondent, v David O. Martin, Appellant.

Third Department, July 14, 1994

### APPEARANCES OF COUNSEL

*Hiscock & Barclay,* Watertown *(Keith B. Caughlin* and *James H. McGowan, III,* of counsel), for appellant.

*Alderman & Alderman,* Syracuse *(Edward B. Alderman* of counsel), for respondent.

**OPINION OF THE COURT**

PETERS, J.

The parties were married in 1966 and had three children. At trial only the youngest remained unemancipated. During the marriage, defendant graduated from law school in 1973 and became a licensed attorney in 1974. He practiced law until 1980 when he was elected to the United States Congress. He served as a Representative through 1992.

Plaintiff was employed while defendant was in law school and contributed her earnings to the family. She remained employed while defendant began his legal practice and left the work force in the late 1970's. It was not until 1988 that she resumed gainful employment outside of the home. During the marriage, she cared for the children, the home and assisted defendant with his political career. At trial, plaintiff was employed as a full-time teacher with a gross yearly income of approximately $28,000, while defendant earned $129,000 as a Representative.

The issues raised in this appeal are threefold. The first issue is whether Supreme Court correctly calculated child support for the remaining infant child. The second issue is whether the award of maintenance was appropriate. The third issue is whether Supreme Court correctly valued defendant's increased earning capacity as a result of his Congressional career and law license.

In reviewing the first decision dated August 28, 1992 rendered by Supreme Court, we find the court to have properly reviewed the child support guidelines, referenced all relevant factors set forth in the Domestic Relations Law regarding child support and maintenance, and established child support in the amount of $1,600 per month until the child reached the age of 21 or sooner became emancipated. Moreover, contrary to defendant's contention, we find that Supreme Court properly considered the child's actual and future needs and that the court need not catalogue each and every factor in order to determine an appropriate award. Hence, in reviewing this record and in affirming the award of child support, we note that we are not confronted with the difficulties described in *Chasin v Chasin* (182 AD2d 862) and *Matter of Holmes v Holmes* (184 AD2d 185).

■ In next addressing the award of maintenance of $500 per month until emancipation of the infant child and, thereafter, $1,000 per month until plaintiff dies, remarries or reaches the age of 62, we note that throughout this lengthy marriage plaintiff worked as a homemaker, caretaker and as an aide to defendant in building his career in Congress. Testimony further established that she left the work force for a lengthy period of time, thereby sacrificing her own career development for his success (see, Semans v Semans, 199 AD2d 790; Oswald v Oswald, 154 AD2d 817; Wilbur v Wilbur, 116 AD2d 953). Accordingly, we find that the award of maintenance rendered by Supreme Court both in amount and duration was not an abuse of discretion.

Finally, as to Supreme Court's valuation of defendant's law license in light of his Congressional career, Supreme Court found, in its August 28, 1992 decision, that defendant's career enhancement was a marital asset subject to equitable distribution. While such asset was not valued until after a hearing, by the time of the hearing defendant had announced his intention not to run for reelection. Regardless, plaintiff propounded the testimony of an expert witness who testified that defendant's career enhancement, based upon his law degree, should be valued at slightly over $500,000 and that his enhanced earnings as a Representative would be valued at slightly under $500,000. In finding that defendant had no established law practice, Supreme Court determined that no merger issue was presented regarding defendant's law license and his Congressional career. While Supreme Court considered the testimony of plaintiff's expert, it was unpersuaded by the expert's contention that a lawyer with an established practice in the Village of Canton, St. Lawrence County, would be earning a yearly income of approximately $125,000. The court therefore factored in the difference between the population of Canton and the population in the communities about which plaintiff's expert testified and reduced the figures of plaintiff's expert by 50%. Relying on DiCaprio v DiCaprio (162 AD2d 944), it determined that plaintiff was entitled to 25% of the total net enhanced earning capacities figure ($70,816).

■ Our review of the record supports Supreme Court's determination that defendant's former Congressional career constitutes "marital property" within the meaning of Domestic Relations Law § 236 (B) (1) (c) subject to equitable distribution (see, O'Brien v O'Brien, 66 NY2d 576, 584). We further find that defendant's law license reemerged as a separate and

valuable asset upon the termination of his Congressional career *(see, Behrens v Behrens,* 143 AD2d 617; *Marcus v Marcus,* 135 AD2d 216), with the valuation thereof enhanced by virtue of defendant's Congressional experience *(see, Elkus v Elkus,* 169 AD2d 134, 140, *lv dismissed* 79 NY2d 851). Since a law degree is not a prerequisite to serving in Congress, we will not find, as urged by defendant, that defendant's law license merged into his Congressional career *(see, McSparron v Mc-Sparron,* 190 AD2d 74). Hence, it is the valuation of defendant's law degree, enhanced by his status as a former Representative, which is now subject to review.

The starting point for Supreme Court's valuation was the $125,000 salary that plaintiff's expert posited defendant would be earning, as a partner, if he had engaged in the private practice of law on a continuing basis since securing his license. Supreme Court's modification of that figure was based solely on geographical location and population factors. No adjustment was made for the fact that defendant did not have an established law practice. Supreme Court's decision further failed to address the impact that defendant's status as a former Representative might have on his future compensation as an attorney. Consequently, use of the $125,000 figure, whether derived from defendant's former Congressional income or from the average salary of law firm partners, cannot be said to have been grounded in the "economic reality" that defendant actually faced *(Harmon v Harmon,* 173 AD2d 98, 107).

Moreover, the adjustment made by Supreme Court assumes that because Canton has a substantially lower population than the communities from which the $125,000 figure was derived, defendant could not be expected to earn that amount. We find that such assumption is premised upon defendant being limited to pursuing employment only in the Canton area. There is nothing in the record to support that conclusion and it is evident that defendant's law license may be used anywhere in New York, as well as other areas where license reciprocity is recognized. Therefore, the valuation of a license which has reemerged as a valuable asset, following abandonment of a previous career or practice, is necessarily a valuation of potential earning capacity *(see, Savasta v Savasta,* 146 Misc 2d 101, 107-108) and may not be limited geographically in the absence of good cause.

We further find an insufficient basis in the record to enable Supreme Court to accurately determine the extent to which

defendant's earning capacity has been increased by the accomplishments that plaintiff helped him achieve during the marriage, namely, the acquisition of a law license and the experience of having served several terms in Congress. Given the complexity and uniqueness of this valuation problem, and in view of Supreme Court's repeated assertion that defendant's Congressional career was irrelevant to its valuation of his law license, which arguably foreclosed plaintiff from presenting the necessary proof on this issue, we remit the matter for further testimony on the value of these enhancements *(see, Wells v Wells,* 177 AD2d 779).

MERCURE, J. (concurring in part and dissenting in part). Because I would modify Supreme Court's judgment by entirely vacating the award based upon defendant's enhanced earning capacity, I dissent from the majority's determination to the extent that they would remit the matter for further proof on that issue. The majority opinion offers little guidance as to whether Supreme Court is to value defendant's Law license, his Congressional career or his law license as enhanced by his Congressional career, so I will briefly deal with each.

Initially, the record demonstrates that plaintiff did not seek distribution of defendant's law license or offer competent proof concerning its value. Plaintiff's pretrial motion was addressed only to defendant's "career as a lawyer/politician and the enhanced earnings resulting therefrom" and plaintiff's expert, Kevin Fahey, limited his testimony to valuation of defendant's career as a Representative and, to a lesser extent, his imaginary career as a lawyer. Fahey's methodology was to compute the surplus of defendant's current $125,000 salary as a Representative over the statistical average salary for males in their late 40's who had completed four years of college (defendant's education at the time of marriage). Fahey then stated that defendant's income as a Representative was not "in excess of that he would have enjoyed had he liked the practice of law and stayed within the confines of that profession". Accordingly, I conclude that plaintiff had an unfettered opportunity to establish the value of defendant's law license, either alone or as enhanced by defendant's political career, and simply failed to do so.

Next, to the extent that the majority seeks to value defendant's Congressional career, I would first note that he is no longer a Representative and has no such career. Additionally,

although courts have moved to expand the rule enunciated in *O'Brien v O'Brien* (66 NY2d 576) to advanced educational degrees and even the celebrity status of a performer's career *(see, Elkus v Elkus,* 169 AD2d 134, *lv dismissed* 79 NY2d 851), I would limit its application to degrees and licenses *(see, DiCaprio v DiCaprio,* 162 AD2d 944, 946-947 [Lawton, J., dissenting], *lv denied* 77 NY2d 802; *see also, McSparron v McSparron,* 190 AD2d 74, 80-81; *but see, Elkus v Elkus, supra; Golub v Golub,* 139 Misc 2d 440; Scheinkman, 1993 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:6, 1994 Pocket Part, at 36-38).

Finally, it is my view that a determination to value defendant's law license, as enhanced by his Congressional experience, expands *O'Brien* well beyond its intended reach. *O'Brien* was a special case designed to deal with a special problem, the "working spouse/student spouse syndrome", where the license was newly earned and the husband's career had nothing but potential. To apply the *O'Brien* doctrine here and attempt to place a value upon the product of a defunct political career and a license that had not been utilized for at least 12 years is nothing less than folly. It not only presents an impossible appraisal problem but fails to adhere to the valuation formulation approved by the *O'Brien* Court *(see,* Scheinkman, 1993 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:6, 1994 Pocket Part, at 37).

MIKOLL, J. P., and YESAWICH JR., J., concur with PETERS, J.; MERCURE, J., concurs in part and dissents in part in a separate opinion.

Ordered that the judgment is modified, on the law, without costs, by deleting the 20th and 21st decretal paragraphs thereof; matter remitted to the Supreme Court for further proceedings on the valuation issues not inconsistent with this Court's decision; and, as so modified, affirmed.