■ NANCY BRUNDAGE, Appellant, v CLIFFORD BRUNDAGE, Respondent. — In an action for a divorce and ancillary relief, the plaintiff wife appeals, as limited by her brief, from so much of a judgment of the Supreme Court, Nassau County

(Murphy, J.), dated January 14, 1983, as (1) failed to consider the defendant husband's pension and profit-sharing plan as marital property subject to equitable distribution, (2) directed that the marital residence be sold within six months after the entry of judgment, (3) ordered the defendant to pay her only $260 per week in maintenance, to be increased to only $275 per week upon the sale of the marital residence and (4) ordered the defendant to pay $50 per week for the support of the parties' minor daughter, with the proviso that if the defendants pays the daughter's college tuition, he will only be obligated to pay the $50 per week in child support during those periods when she is at home with her mother, or until she reaches 21 years of age or is sooner emancipated. ¶ Judgment modified by deleting the second, third and fourth decretal paragraphs thereof. As so modified, judgment affirmed insofar as appealed from, with costs to plaintiff, and matter remitted to the Supreme Court, Nassau County, for further proceedings in accordance herewith. Pending the hearing at Special Term, defendant shall pay the sum of $260 per week to the plaintiff for temporary maintenance. ¶ We agree with plaintiff that Special Term erred by failing to consider the pension and profit-sharing plans, in which defendant participated through his employer, as marital property subject to equitable distribution pursuant to the decision of the Court of Appeals in *Majauskas v Majauskas* (61 NY2d 481) and the decisions of this court in *Damiano v Damiano* (94 AD2d 132), *Rodgers v Rodgers* (98 AD2d 386) and *Kobylack v Kobylack* (96 AD2d 831). Plaintiff's claim for an equitable share of defendant's interest in his pension and profit-sharing plans, which this court has held constitute forms of deferred compensation, is particularly persuasive in the instant case. Defendant served as the primary breadwinner during the parties' marriage of approximately 27 years' duration and plaintiff, who was a full-time homemaker throughout most of the marriage, had a reasonable expectation that she would share in the future enjoyment of defendant's pension and profit-sharing plans. Therefore, this matter is remitted to Special Term for further proceedings to determine the characteristics of defendant's pension and profit-sharing plans (e.g., whether his interest in the pension plan is vested or nonvested), the value of defendant's interests in both plans as of the date of the commencement of the matrimonial action, plaintiff's equitable share of those interests and the appropriate method of distributing that share to her in accordance with *Majauskas v Majauskas* (*supra*), *Damiano v Damiano* (*supra*) and *Kobylack v Kobylack* (*supra*). The record reveals particular questions as to the value of the defendant's interest in his profit-sharing plan. Defendant testified at trial that, subsequent to the commencement of the divorce action, he withdrew considerable sums of money from his profit-sharing account, which he used to defray his own living expenses, as well as to pay the college tuition for the parties' son and daughter. At the hearing to be held upon remittal, defendant should present evidence as to the amounts of money he withdrew or borrowed from the profit-sharing account and the expenditures he made with that money. If the evidence reveals that defendant expended a substantial portion of the money he withdrew from the profit-sharing account for the support of plaintiff and his children and that he did not have any other income or assets to replace the moneys he withdrew, Special Term may exercise its discretion to decline to award plaintiff an equitable share of defendant's interest in the profit-sharing plan. In making its determination in this regard, the court should set forth the factors it considered and the reasons for its decision (Domestic Relations Law, § 236, part B, subd 5, par g). ¶ On appeal plaintiff challenges both the amount of the award of maintenance and the failure of Special Term to set forth the factors it considered in arriving at that award, as mandated by section 236 of the Domestic Relations Law (part B, subd 6, par b). Special Term failed to refer to any of the factors

enumerated in section 236 of the Domestic Relations Law (part B, subd 6, par a) which it considered in arriving at the award of maintenance (see *D'Amato v D'Amato,* 96 AD2d 849; *Nielsen v Nielsen,* 91 AD2d 1016). Therefore, upon remittal, Special Term is directed to make detailed findings of fact to support the award of maintenance in accordance with the factors enumerated in the statute (see *Kobylack v Kobylack,* 110 Misc 2d 402, mod on other grounds 96 AD2d 831, *supra*). Special Term may reconsider the amount of the award of maintenance in light of any additional award plaintiff recovers representing her share of defendant's pension and profit-sharing plans (see Domestic Relations Law, § 236, part B, subd 6, par a, cl [1]). ¶ Furthermore, this court concludes that sufficient "special circumstances" exist in the instant case to include a provision in the judgment requiring defendant to pay the tuition for his daughter, who is attending a private college (see *Frankel v Frankel,* 82 AD2d 796, 797; *Kaplan v Wallshein,* 57 AD2d 828). The record reveals that both plaintiff and the daughter's brother are college educated. Defendant, a successful salesman for Dun and Bradstreet, Inc., is the only parent who has the financial means to pay college tuition. Indeed, he testified at trial that he had been voluntarily paying the college tuition for both his son and daughter and hoped to continue doing so. Under these circumstances, it is only fair that the parties' daughter, who was in the middle of her college education at the time of her parents' divorce, should be granted the financial means to finish her education. Upon remittal Special Term should make an award of child support sufficient to pay the cost of the college tuition and room and board expenses in compliance with 22 NYCRR 699.9 (f) (6) and in addition the judgment should include a provision requiring defendant to pay $50 per week to the plaintiff in child support for his daughter for those periods when she is not at college. All court ordered child support payments shall cease when the parties' daughter reaches 21 years of age or is sooner emancipated (Family Ct Act, § 413). ¶ Lastly, this court concurs with the determination of Special Term directing that the marital residence be sold within six months of the date of the entry of the judgment of divorce, in view of the fact that (1) both of the parties' children are over 18 years of age and reside for the most part away from their parents and (2) plaintiff's own needs can be met in a smaller residence at a lower monthly cost (see *Wobser v Wobser,* 91 AD2d 826; *Sharer v Sharer,* 60 AD2d 780; *Parlato v Parlato,* 44 AD2d 720; *Ripp v Ripp,* 38 AD2d 65, affd 32 NY2d 755). On remittal, however, Special Term should make a determination as to which spouse should be responsible for the mortgage payments and other carrying charges on the marital residence pending its sale (cf. 22 NYCRR 699.9 [f] [6]). O'Connor, J. P., Weinstein, Niehoff and Boyers, JJ., concur.