■ SHERYL BEHRENS, Appellant-Respondent, v JEFFREY BEHRENS, Respondent-Appellant.—In an action for a divorce and ancillary relief, the plaintiff wife appeals (1) from an order of the Supreme Court, Nassau County (McCabe, J.), dated July 10, 1987, which denied her motion to set aside and/or modify the court's memorandum decision dated March 10, 1987, and (2) from stated portions of a judgment of the same court, entered July 20, 1987, which, after a nonjury trial, *inter alia,* (a) ordered the immediate sale of the marital residence, (b) distributed the marital property, and (c) awarded her only $100 per week in maintenance until the first Friday of September 1988 and $100 per week per child in child support; and the defendant husband cross-appeals from stated portions of the same judgment which, *inter alia,* distributed the marital property, ordered him to pay for the children's college expenses, awarded the wife $15,000 in attorney's fees, and fixed the date on which child support and maintenance was to commence as the first Friday following the entry of judgment.

Ordered that the appeal from the order dated July 10, 1987, is dismissed, without costs or disbursements, as no appeal lies from an order denying a motion to set aside and/or vacate a decision; and it is further,

Ordered that the judgment is modified, on the facts and in the exercise of discretion, by (1) deleting the tenth decretal paragraph, (2) adding to section (a) of the eleventh decretal

paragraph following the words "marital residence" the words "to be transferred to her via a qualified domestic relations order", (3) deleting from the thirteenth decretal paragraph the amount "$100" and substituting therefor the amount of "$150", (4) deleting from the seventeenth decretal paragraph thereof the words "September of 1988" and substituting therefor the words "October of 1988", (5) deleting from the eighteenth decretal paragraph the sum of $1,000 and substituting therefor the sum of $1,500, (6) deleting from the twentieth decretal paragraph the words "parties promptly upon the closing of the sale of the marital residence" and substituting therefor the word "defendant", and (7) deleting the twenty-first decretal paragraph thereof; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for the purpose of taking such further evidence, if any, as it deems appropriate concerning the value of the defendant's medical license and the wife's contributions to its acquisition, and for an appropriate distributive award.

In making its equitable distribution award the trial court did not discuss what weight it gave each factor in Domestic Relations Law § 236 (B) (6). However, the record contains sufficient evidence to allow this court to make its own findings *(see, Formato v Formato,* 134 AD2d 564).

The plaintiff is contesting various provisions of the judgment of divorce with emphasis on that section which ordered the sale of the marital residence. In its memorandum decision dated March 10, 1987, the trial court determined that the home had to be sold to pay off debts incurred by the parties and because the upkeep of the home was more than the parties could afford. The plaintiff argues that a sale of the marital residence will force her and the children to leave their present community, with which the family has established strong ties, and relocate to an entirely new area without realizing a substantial decrease in housing expenses. The record reveals that the couple purchased the marital residence in Dix Hills, in 1982 for $153,000. It was stipulated that at the time of trial the house was worth $310,000. The mortgage payment, including real estate taxes, was $1,907 per month. The other expenses, including utilities, telephone, gardening and insurance, brought the total monthly cost up to $2,700. According to the plaintiff the cost of obtaining replacement housing in the Dix Hills area would be between $2,500 and $3,500 per month. The defendant testified that he had investi-

gated the availability of housing in other "nice neighborhoods" on Long Island and found that a three-bedroom house could be rented for between $1,100 and $1,300 per month. While this court has generally favored allowing a custodial parent to remain in the marital residence at least until the youngest child reaches the age of 18 years or is sooner emancipated (see, Cassano v Cassano, 111 AD2d 208; Hillmann v Hillmann, 109 AD2d 777; Patti v Patti, 99 AD2d 772), in this case we agree with the finding of the trial court that the home must be sold. The parties are financially incapable of maintaining the marital residence and there is no doubt that replacement housing can be found at a substantial saving on Long Island. The children are young enough to make the necessary social adjustments that a move from Dix Hills will entail (see, Cassano v Cassano, supra; Patti v Patti, supra). Given the defendant's testimony that the cost of alternative housing would be at least $1,100 to $1,300 per month, we direct that the housing allowance award be increased from $1,000 to $1,500 per month, which award is to be treated as a maintenance payment to the wife for income tax purposes. Furthermore the child support payments will be increased from $100 per week to $150 per week per child.

Even with the increases herein granted it will be necessary for the wife to return to work as soon as possible in order to supplement the family's income. We therefore agree with the trial court's award of maintenance in the amount of $100 per week. The wife expects to resume employment as a school teacher and her hours of work will correspond with the children's school hours; therefore, her return to work in the near future will not significantly interfere with their care (see, Hillmann v Hillmann, supra). Since there may be a short delay until she begins to receive her salary, we are extending the maintenance payments for an additional month until the first Friday of October 1988.

Although the trial court stated that funds to be realized from the sale of the marital residence were needed to pay marital debts, the record reveals that the major portion of these marital debts were incurred by the defendant to pay income taxes. The total debt computed by the trial court was $47,623. In view of the husband's substantial income and since the trial court awarded him $50,000 in accounts receivable from the sale of his New York medical practice, we conclude that the husband should be responsible for payment of these debts.

The wife argues that the court erred when it valued the

defendant's New York medical practice which he sold in October 1985 at the price of $120,000. She also contends that the court should have valued the defendant's medical license and awarded her a distributive share. The plaintiff's expert valued the practice at $225,000, while the defendant's expert evaluated it at $52,000. The court settled on $120,000 which it determined was the approximate value for which the practice was actually sold. Based on the record before us we cannot say that the trial court's determination as to the value of the medical practice was wrong. The wife was awarded one third of the value of the practice, as well as one third of the husband's Keogh plan. Considering the length of the marriage, the age of the parties and their respective contributions to the success of the practice, we find the award was equitable (see, Shahidi v Shahidi, 129 AD2d 627). We agree with the wife, however, that the trial court should have valued the husband's medical license. Because of the sale of his medical practice shortly before commencement of the litigation and his move to another State where he opened a new practice, the husband's license reemerged as a significant and separate asset (see, Marcus v Marcus, 137 AD2d 131), to be distributed upon dissolution of the marriage (O'Brien v O'Brien, 66 NY2d 576). We therefore remit the matter to the Supreme Court for the purpose of taking such further evidence, if any, as it deems appropriate concerning the value of the license and the wife's contributions to its acquisition and for the making of an appropriate distributive award.

Since the purpose of awarding the plaintiff a distributive share of the defendant's Keogh plan is to allow her to provide for her own retirement, the transfer should be made pursuant to a "qualified domestic relations order" as defined in Internal Revenue Code (26 USC) § 414 (p).

It was not an improvident exercise of discretion for the court to award the plaintiff $15,000 in attorney's fees considering her inability to pay the entire cost of her legal representation (see, Domestic Relations Law § 237; Baynon v Baynon, 111 AD2d 733). Neither was it improper for the court to order the defendant to pay the children's college expenses in view of the fact that both parents are college graduates and professionals and considering the relative financial circumstances and prospects of the parties (see, Brundage v Brundage, 100 AD2d 887).

We have reviewed the remaining arguments of both the plaintiff and defendant and find them to be without merit. Mangano, J. P., Thompson and Harwood, JJ., concur.

Weinstein, J., concurs insofar as the appeal from the order

is dismissed and the judgment is modified, but otherwise dissents and votes to further modify the judgment by deferring the sale of the marital residence until the youngest child of the parties reaches the age of 18 years or is sooner emancipated, and by (1) deleting the seventh decretal paragraph thereof and substituting therefor a provision awarding the plaintiff sole possession of the marital residence located at 10 Ebbtide Lane, Dix Hills, New York, until the youngest child reaches the age of 18 years or is sooner emancipated at which time the residence will be put up for sale, (2) adding to the eighth and ninth decretal paragraphs thereof after the words "ADJUDGED, that", the words, "upon the ultimate sale of the residence", (3) deleting from section (a) of the eleventh decretal paragraph thereof the words "to be paid to her out of defendant's share of the net proceeds of the sale of the marital residence" and substituting therefor the words "to be transferred to her via a qualified domestic relations order", (4) deleting from sections (b) and (c) of the eleventh decretal paragraph thereof the words "out of defendant's share of the net proceeds of the sale of the marital residence", (5) deleting from section (d) of the eleventh decretal paragraph thereof the words "of defendant's share of the net sale proceeds of the marital residence", and (6) deleting from sections (k) and *(l)* of the eleventh decretal paragraph thereof the words "out of plaintiff's share of the net sale proceeds of the marital residence", with the following memorandum, in which Eiber, J., concurs. Unlike the majority, I am of the view that the trial court erred in directing an immediate sale of the former marital residence. As the majority has noted, this court has generally evinced a propensity for allowing a custodial parent to retain sole occupancy of the marital residence at least until the youngest child attains the age of 18 or is sooner emancipated *(see, Cassano v Cassano,* 111 AD2d 208, 210; *Hillmann v Hillmann,* 109 AD2d 777, 778; *Patti v Patti,* 99 AD2d 772, 773). Among the factors to be considered in determining "the need of [the] custodial parent to occupy or own the marital residence" (Domestic Relations Law § 236 [B] [5] [d] [3]) are the cost of maintaining that residence as opposed to alternative living accommodations, the length of time the children lived in the marital residence and the availability of replacement housing in the same community *(see, Cassano v Cassano, supra; Patti v Patti, supra).*

In the instant case, the trial court ordered the sale of the marital residence based upon its belief that the parties could simply not afford to incur the costs of maintaining that

particular residence. In the language of the court, "Quite simply, the parties could not afford the luxuries they gave to themselves". Furthermore, the court viewed the residence as the only major salable asset of sufficient value to pay off the marital debts with sufficient funds remaining to allow for a substantial distribution to each party.

Although it appears, at first blush, that the cost of housing outside the Dix Hills area would be substantially below the cost of maintaining the marital residence, the projected savings may be somewhat illusory when certain factors are considered. While the defendant testified that his investigations had revealed that the plaintiff could rent a three-bedroom home in a "nice" area of Long Island for between $1,100 and $1,300 per month, the record is devoid of any indication that this sum includes any of the expenses necessarily associated with the upkeep of a home, i.e., utilities, telephone and insurance. Based on the ages of the three children, alternative housing of at least three bedrooms would be required for the next 10 years. Considering the increases in rent which could be expected during that period, it is reasonable to conclude that it would not be long before the cost of renting would exceed the present mortgage payment on the marital residence. In view of the ages of the children and their strong ties to the community, I believe that the wife should be permitted to retain possession of the marital residence until the youngest child becomes 18 or is sooner emancipated. Notwithstanding the defendant's contention that he is in debt and unable to afford the maintenance of the marital residence, the record reveals that at the time of trial, his position in West Virginia guaranteed him an income of $100,000 per year and, based on his past income, he is readily capable of earning substantially more. There is no reason to doubt that once he settles into a new practice, his earnings will soon reach levels equalling or exceeding those of his New York practice. Consequently, he should be compelled to assume a substantial portion of the cost of maintaining his family in the marital residence.

Although the trial court believed that the sale of the marital residence was required in order to pay off what the court termed "marital debts", the record reveals that the major portion of this marital debt was incurred by the defendant as a means of paying income taxes. The total debt computed by the court was $47,623. In light of the husband's substantial income and in view of the fact that the trial court awarded him $50,000 worth of accounts receivable from the

sale of his New York practice, equity dictates that the husband should be responsible for the payment of these debts.

In conclusion, I concur with the majority's modifications of the judgment appealed from. However, consistent with my view that the immediate sale of the marital residence should not have been ordered, I would also further modify the judgment appealed from as set forth above.