■ JACQUELINE RICCIARDI, Appellant, v PETER RICCIARDI, Respondent.—In a matrimonial action in which the parties were divorced by a judgment dated July 14, 1981, the plaintiff appeals (1) from so much of an order of the Supreme Court, Westchester County (Kaiser, J.H.O.), entered May 16, 1989, as directed the sale of the former marital residence following the end of the 1988-1989 school year, and (2) as limited by her brief, from so much of an order of the same court, entered October 3, 1989, as, upon reargument, adhered to the original determination.

Ordered that the appeal from the order entered May 16,

1989, is dismissed, as that order was superseded by the order entered October 3, 1989; and it is further,

Ordered that the order entered October 3, 1989, is affirmed insofar as appealed from; and it is further,

Ordered that the defendant is awarded one bill of costs.

The parties to the instant appeal were married on April 24, 1965. They had three children, Christopher, born December 16, 1968, Elizabeth, born October 28, 1970, and Emily, born November 13, 1972. They were divorced on July 14, 1981, and by judgment dated October 19, 1982, determining the financial issues, the plaintiff wife was awarded exclusive possession and occupancy of the marital residence "until further order of the Court". The wife was also awarded custody of the three children and thus, the former marital residence continued to be home to the wife and three children.

In May 1987 the defendant husband moved to modify the judgment dated October 19, 1982, *inter alia,* to compel the sale of the former marital residence in which he retained a 50% interest. In support thereof, the husband argued, in essence, that the parties' eldest son Christopher was an 18-year-old high-school senior who would soon be entering college and that Elizabeth and Emily would soon be embarking on their own college educations. In light of burdensome college expenses, for which the husband would soon be responsible, coupled with the fact that the wife would no longer need to occupy the four-bedroom former marital residence set on one acre of land in Chappaqua, the husband requested that the house, which he estimated as being worth up to $400,000 be sold. At the time of this application, the husband was earning a salary of $80,000 per year plus bonuses of $63,000. In response, the wife alleged that the husband had significant unreported income and further suggested that he should sell one of his other assets to finance the children's education rather than force the sale of the former marital residence. Additionally, the wife, who was earning $19,500 as a part-time nutritionist, cross-moved for an increased award of child support and maintenance, citing, *inter alia,* generally increased expenses.

The matter was tried before a Judicial Hearing Officer commencing April 7, 1988, and continued for several days over the following months. Initially, the main subjects for inquiry were the children's needs and the parents' respective resources. However, at the continued hearing of October 6, 1988, it was revealed that the husband had been asked to resign from his position due to the economic downturn follow-

ing the stock market crash of October 1987. At the time of this hearing, Christopher was attending the University of Richmond in Virginia, and was returning to the former marital residence during vacations. The wife testified that it was her intention that Elizabeth and Emily, who were then 17 and 15 years old respectively, would be attending college in the future as well. The wife acknowledged that if all three children attended college for four years upon their anticipated high school graduation, then for a period of eight consecutive years the husband will be responsible for putting three children through college, with two matriculating at any point during those eight years. At the time, Christopher's annual education expenses were approximately $15,000.

In an order entered May 16, 1989, the court directed the sale of the former marital residence. Significantly, at the time the order was entered Elizabeth, too, had graduated from high school and would soon be embarking on a college career, leaving only Emily living with the wife in the former marital residence. Moreover, the court acknowledged that the husband was still unemployed, had no realistic prospects of reemployment, and was in debt for over $93,000. The sale of the residence would free the parties' equity in the house of $350,000, 50% of which would be available to the husband to be used toward the children's college tuitions and other expenses. Upon the wife's subsequent motion for reargument, the court adhered to the original determination. The wife now appeals and we affirm.

The court was correct in reasoning that ordinarily the custodial parent is awarded possession of the former marital residence for the well being of the minor children. At a time when their parents' marriage is dissolving, the children of a divorce should not suffer from the added turmoil of being uprooted from the familiar surroundings of friends and school. In the instant case, however, the parties' children are presently 22, 20 and 18 years of age respectively, and thus even the youngest daughter Emily has presumably begun her college education. The children are no longer in their vulnerable, tender years. Clearly, the needs of the children and the wife as well, to continue their residence in the former marital home must yield to the financial needs of the parties. This is especially so under the facts of the instant case, since it is the proceeds from the sale of the former marital residence which will finance the children's college educations. Accordingly, as the children's and wife's preference for continuing occupancy of the former marital residence is outweighed by the more

immediate and paramount concerns of providing for the children's college educations, the sale of the former marital residence is appropriate (see, Lauer v Lauer, 145 AD2d 470; Behrens v Behrens, 143 AD2d 617; Schaeffer v Schaeffer, 142 AD2d 568). Thompson, J. P., Brown, Miller and O'Brien, JJ., concur.