■ Louise Matisoff, Respondent-Appellant, v Stephen J. Dobi, Appellant-Respondent. [644 NYS2d 13]

In May 1981, plaintiff and defendant, recently married, entered into an agreement whereby each party pledged neither to hold nor to acquire "any right, title or claim in and to the real and personal estate of the other solely by reason of the marriage of the parties". This agreement was made at the insistence of plaintiff, who, concerned about defendant's two unsuccessful previous marriages and other personal matters,

wished to protect her real property and other assets in the event that the marriage ultimately floundered. The agreement was drafted by an attorney friend of plaintiff and executed at the attorney's New York City office. At the time of this agreement, each party's income was approximately $40,000, and plaintiff's income has remained stable since that time. Defendant, however, earned an MBA in 1987 and increased his annual income from $50,000 in 1987 to more than $400,000 in 1992. Throughout the course of their marriage, the parties maintained largely separate finances including, *inter alia*, separate bank accounts, division of housing and vacation costs, alternating responsibility for payments for entertainment, reimbursement for occasional purchases on the other's charge card, filing individual tax returns or paying proportional shares of a joint return, and the like. The parties continued this arrangement until the commencement of the within divorce action. The marriage had no issue.

Plaintiff commenced this action for divorce in September 1992. In February 1995, the Supreme Court issued an order granting the divorce, dividing marital property, and awarding plaintiff maintenance and attorney's fees. The trial court found that the May 1981 agreement was void for failure to comply with Domestic Relations Law § 236 (B) (3), which provides that a marriage agreement shall be enforceable in a matrimonial action if the agreement "is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded". Defendant appealed on this and other grounds; plaintiff cross-appealed for an increase in maintenance in the event that the distributive award were to be reduced.

We reverse and remand for enforcement of the marital agreement. While we recognize that an agreement "shall be valid and enforceable" pursuant to section 236 (B) (3) if it has been acknowledged or proven in a formal fashion, we do not read the statute, enacted to prevent fraud and overreaching in nuptial contracts, to pose an irrebuttable per se negation of agreements and arrangements which lack such acknowledgement. *(See, Sanders v Copley*, 151 AD2d 350 [1989] [in-court stipulation]; *Aziz v Aziz*, 127 Misc 2d 1013 [Sup Ct, Queens County 1985] [religious agreement].) In this case, there is no allegation that the contract was the product of fraud, duress, or misunderstanding or was otherwise undertaken to plaintiff's disadvantage. On the contrary, the agreement was entered into at plaintiff's insistence and to protect plaintiff's property interests; it was drafted by an attorney chosen by plaintiff and

was executed at counsel's office; its terms were acknowledged and ratified in the daily activities and property relations of the parties throughout their eleven-year marriage. Under these unique and limited circumstances, we hold that the agreement is valid and enforceable against plaintiff. Because the agreement expressly and unambiguously bars all claims by either party upon the property of the other by reason of their marriage, the trial court's award of property, maintenance, and attorney's fees in this matter was unwarranted. Concur—Murphy, P. J., Kupferman and Nardelli, JJ.

Tom, J., dissents in a memorandum as follows: I respectfully dissent and vote to affirm the judgment of the IAS Court.

The issue raised in this appeal is whether an agreement, entered into by the parties during their marriage concerning the division of their property, which did not comply with the formalities of Domestic Relations Law § 236 (B) (3), is valid and enforceable.

The parties entered into the subject agreement (the "Agreement") on May 13, 1981, one month after they were married. The Agreement provided that the husband and wife each waive any rights accrued during the marriage "with respect to previously and after acquired property". Plaintiff-wife commenced this divorce action in September 1992 and defendant-husband sought to enforce the Agreement, apparently for reasons that his annual salary, which was approximately $21,000 at the time of the marriage, had skyrocketed to approximately $585,000 in 1993, while the wife's salary remained at approximately $40,000.

Domestic Relations Law § 236 (B) (3) provides, in pertinent part: "An agreement by the parties, made before or during the marriage, *shall be valid* and enforceable in a matrimonial action *if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded*" (emphasis added).

The foregoing statutory requirement is clear and unequivocal, and mandates full compliance before any "opting-out" agreement can be rendered enforceable in a matrimonial action. The Agreement herein signed by the parties was neither acknowledged nor notarized. Since the statute unequivocally states the manner in which the agreement must be executed, and the Agreement concededly failed to comply with the statutory requirement, it is therefore not enforceable (*see, Katta v Katta*, 203 AD2d 531; *Marlinghaus v Marlinghaus*, 202 AD2d 994; *Conti v Conti*, 199 AD2d 985; *Patelunas v Patelunas*, 139 AD2d 883; *Lischynsky v Lischynsky*, 95 AD2d 111; *see also, Pacchiana v Pacchiana*, 94 AD2d 721).

I disagree with the majority's conclusion that because there was an absence of allegations concerning fraud or duress, the agreement is valid because the statute does not call for a per se negation of agreements. Rather, a reading of the statute makes it clear that in order to be "valid and enforceable", the agreement must comply with the formalities set forth therein.

Nor do I concur with the majority's finding that the parties "ratified" the agreement through their daily activities during the course of the marriage. The intent of the Legislature in enacting the Equitable Distribution Law (L 1980, ch 281, § 9) was to change traditional division of property, based upon legal title at the dissolution of the marriage, and to give effect to the "economic partnership" concept of the marriage relationship by requiring that marital property be distributed, upon dissolution, in a manner which reflects the individual needs and circumstances of the parties regardless of legal title of the property (Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 236, at 140, 141; *also see, Majauskas v Majauskas*, 61 NY2d 481). Although the enactment made a broad change in the division of property upon the dissolution of a marriage, the Equitable Distribution Law recognizes and sanctions a marital agreement concerning the parties' resolution of property disputes provided it complies with the formal execution requirements of Domestic Relations Law § 236 (B) (3).

In the case at bar, the majority's finding that the Agreement was somehow ratified and validated by the conduct of the parties would, in essence, circumvent and defeat the very statutory scheme of the Equitable Distribution Law, which was to provide an equitable division of marital property predicated on the requisite needs and circumstances of the parties, rather than on the activities during their marriage. Since the Agreement is invalid, the parties' conduct during the marriage cannot be used as an indicator by which an invalid Agreement is rendered enforceable.

Further, the Agreement, by its own terms, was to govern their finances upon the break-up of the marriage. So to say that the parties' activities during their marriage should somehow serve to ratify an agreement dictating various financial arrangements after the marriage does not logically follow.

With regard to the parties' remaining contentions, I find that the IAS Court properly concluded that the MBA degree obtained by defendant-husband during the course of the marriage to be marital property subject to equitable distribution (*see, O'Brien v O'Brien*, 66 NY2d 576; *Martin v Martin*, 200

AD2d 304; *Holihan v Holihan*, 159 AD2d 685). As stated by the Court of Appeals in *O'Brien*: "[A]n interest in a profession or professional career potential is marital property which may be represented by direct or indirect contributions of the non-title-holding spouse" *(supra,* at 584).

Finally, the IAS Court did not abuse its discretion in awarding counsel fees to the plaintiff-wife as Justice Friedman properly considered the respective financial conditions of the parties, as well as other circumstances of the case, before making the award *(DeCabrera v Cabrera-Rosete,* 70 NY2d 879; *Nayar v Nayar,* 225 AD2d 370).