(September 30, 1997)

■ Louise Matisoff, Respondent-Appellant, v Stephen J. Dobi, Appellant-Respondent. [663 NYS2d 526] —Judgment of the Supreme Court, New York County (Lewis Friedman, J.), entered March 10, 1995, which, *inter alia*, awarded plaintiff 40% of defendant's enhanced earning potential and counsel fees and declined to enforce the parties' postnuptial agreement, unanimously affirmed.

The appealed judgment deemed the parties' marital property subject to the equitable distribution provisions of the Domestic Relations Law (Domestic Relations Law § 236 [B]). The parties had, however, entered into a postnuptial agreement pursuant to which they disavowed "any right, title or claim in and to the real and personal estate of the other solely by reason of the marriage of the parties". Because this agreement was drafted at plaintiff's insistence and by her attorney—defendant having been unrepresented—and because the agreement had been subsequently acknowledged under oath by the parties in open court, and, indeed, because there was not even a colorable claim of fraud in connection with the agreement which had been scrupulously abided by the parties during the marriage, we believed the agreement to be enforceable (228 AD2d 200) and, accordingly, rejected plaintiff's contention that the agreement ought to be deemed invalid for lack of acknowledgment conforming to that described in Domestic Relations Law § 236 (B) (3), which provides in relevant part that "An agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded." While the parties' agreement concededly was not "acknowl-

edged \* \* \* in the manner required to entitle a deed to be recorded", we were of the view that the statute, literally read, did not absolutely require such acknowledgment as a condition of contractual validity, for, as is manifest, the statute does not state, as it might have, that an agreement shall be invalid unless acknowledged in the aforestated manner; it provides only that if acknowledged in that manner it will be valid. In stating grounds sufficient to deem nuptial agreements valid, the statute does not logically relegate all non-conforming agreements to the dust bin. Thus, while we thought it reasonable, given the statutory objectives of preventing fraud and overreaching in nuptial agreements, to read the statutory language as raising a strong presumption of invalidity as to non-conforming agreements, we did not understand the statute "to pose an irrebuttable per se negation of agreements and arrangements which lack such acknowledgment" (228 AD2d, *supra,* at 201). The undisputed circumstances attending the execution, observance and subsequent sworn acknowledgment of the agreement at bar, we thought, were sufficient to overcome the presumption which we understood to be raised by the statute (*supra*).

On plaintiff's appeal from our order directing that the parties' post-nuptial agreement be enforced with the consequence that their property would be shielded from equitable apportionment pursuant to Domestic Relations Law § 236 (B), the Court of Appeals ruled that, contrary to our understanding, the statute did indeed categorically require the invalidation of any nuptial agreement not acknowledged in the manner of a recordable deed (90 NY2d 127, *revg* 228 AD2d 200, *supra*). Recognizing that such a "bright line" rule might be productive of harsh results, the Court nonetheless expressed the view that it was of paramount importance that the enforceability of nuptial agreements be consistent and predictable and, accordingly, held that the validity of such agreements should not be made to depend upon subsequent fact-sensitive inquiries respecting the parties' original motivations or their post-contractual economic relations during marriage (*supra,* at 131-132). Having thus construed the statute as setting forth a rule of per se invalidity as to agreements lacking the statutorily stated form of acknowledgment, the Court, however, went on to observe that the equitable factors cited by defendant in support of the agreement's enforcement might still possess relevance in the equitable distribution context (*supra,* at 135-136). The Court thereupon remitted the case to us for consideration of defendant's appellate claims of error respecting the distributive and maintenance awards decreed by the trial court.

Consideration of these claims, of course, had been obviated on our initial consideration of the appeal by reason of our determination that the parties' agreement effectively withdrawing their assets from equitable distribution was enforceable.

In the absence of an enforceable agreement shielding property from the operation of the equitable distribution statute, we do not believe that the parties' intentions, however clearly expressed, to keep what would otherwise be deemed marital property separate can be given effect. Indeed, the benefits of a "bright line" rule, such as Domestic Relations Law § 236 (B) (3) has now been read to establish would be rendered largely, if not wholly, illusory if parties could by means other than a duly acknowledged agreement effect the withdrawal of property from equitable distribution. The intentions of parties to keep property separate, whether reflected in conduct or expressed in words, then must, in light of the Court of Appeals decision in this case, be deemed wholly ineffectual respecting the basic determination as to which property is marital and which separate, unless the parties' intentions are reduced to the form of a statutorily conforming agreement. And, we note that the statute in defining "separate property" makes no allowance for the intent of the parties, except as that intent is expressed in such a statutorily conforming writing (Domestic Relations Law § 236 [B] [1] [d] [4]).

The Court of Appeals has, however, suggested pointedly that, although property may not be withdrawn from equitable distribution by statutorily non-conforming expressions of intent, such expressions may still have relevance respecting the manner in which marital property is ultimately equitably apportioned and distributed. And, in this connection, the statute allows the court broad latitude to consider "the circumstances of the case and of the respective parties" (Domestic Relations Law § 236 [B] [5][c]), and, indeed, "any other factor which the court shall expressly find to be just and proper" (Domestic Relations Law § 236 [B] [5] [d] [13]). The issue before us on remittal, then, is what weight ought, in the context of equitable distribution, to be accorded the parties' expressions of intent by word and deed during their marriage that (1) neither would acquire property solely by reason of the marriage and (2) that each would remain financially independent of the other.

As to the former set of intentions, even if these could be viewed as still persisting—and, clearly they may not be since plaintiff in the years since her insistence upon the above-described agreement has obviously changed her mind as to the advisability of relinquishing her claim to marital property—

they would not be cognizable in the equitable distribution context. If, as the Court of Appeals has now held, it is not permissible to withdraw what would otherwise be deemed marital property from equitable distribution by means short of an agreement possessing the statutory indicia of validity, neither can it be possible effectively to accomplish the same end by identically deficient means in the context of equitable distribution.

We reach somewhat different conclusions, however, as to the possible relevance of the latter set of intentions, namely, the parties' frequently evidenced and clearly enduring reciprocal intentions to remain financially autonomous, one from the other. In this connection, it may be observed that the equitable distribution of marital property depends not only upon the extent to which marital property has been acquired or improved by each of the parties (*see*, Domestic Relations Law § 236 [B] [5] [d] [6]), but also upon the parties' respective financial circumstances, needs and prospects (*see*, Domestic Relations Law § 236 [B] [5] [d] [1], [2], [3], [4], [7], [8]), and the extent to which the needs of a less prosperous spouse have been otherwise met through an award of maintenance (Domestic Relations Law § 236 [B] [5] [d] [5]). Plainly, then, the statute recognizes provision for a dependent spouse as an important equitable objective. Conversely, and just as plainly, in a case such as this one, where the parties have given repeated demonstrations that their union was not intended to have financial dimension or to foster financial dependence and each has consistently shown the ability to manage without the other's financial assistance, the aforecited equities running in favor of a dependent spouse are not present. This said, however, it does not follow that the absence of these equities was lost upon the trial court or that it was not given appropriate weight as the court went about making the distributive award here at issue. Indeed, the trial court was careful to note upon a review of the lengthy trial record that "these parties lived substantially separate financial lives" and the court, accordingly, did not, in the main, justify its distributive award as a means to provide for economic dependencies arising out of the marriage. Rather, the distributive award was justified as to each of its components on the basis of the parties' respective contributions to the acquisition or improvement of the particular marital property at issue.

In any event, no appellate issue has been raised as to the adequacy of the trial court's justification of its apportionment of property deemed marital. Defendant's arguments, as limited

by his appellate presentation, have rather been directed toward demonstrating either that the concept of marital property ought to have no application by reason of the parties' nuptial agreement, or, alternatively, that defendant's enhanced earning capacity ought not to be deemed a distinct and separately valued part of the marital estate since it has merged with his career as an investment analyst.

The first of these arguments has, of course, been rejected by the Court of Appeals. The second lacks merit. The concept of merger has been employed by trial and intermediate appellate courts to bar a separate distributive award for a marked enhancement during marriage of a spouse's earning capacity, where the spouse seeking the distribution has already enjoyed a substantial long-term benefit from the enhancement. In such cases, the enhancing circumstance has been conceived of as merged with the ensuing career to which it relates and so has not been viewed as constituting a distinct and separately assessable item of marital property. The rationale for the use of the merger doctrine in the matrimonial context has been to prevent a double recovery. However, while the objective may have been sound, merger as a means to its attainment has not been a success; the doctrine has proved difficult to apply with any degree of uniformity and not infrequently anomalous in its results and as a consequence has recently been rejected by the Court of Appeals in *McSparron v McSparron* (87 NY2d 275).* As the *McSparron* Court aptly observed, the real issue arising in the context of equitable distribution when the earning capacity of a spouse has been significantly enhanced during the marriage is the extent of the residual post-marital enhancement and this is an inquiry which is not in any way elucidated by means of the merger concept (*supra,* at 285-286).

We see no basis to disturb the factual findings of the trial court justifying the conclusion that the residual post-marital income enhancement attributable to defendant's acquisition of his MBA degree during the course of the marriage was some $2,827,412. Prior to entering graduate school to obtain his MBA, defendant worked in the film industry and was remunerated at an annual rate of about $35,000. By the time of the commencement of this action, defendant, having obtained his MBA and thereafter having become employed successively as a research analyst for several prestigious investment houses,

---

* *McSparron (supra)* was decided by the Court of Appeals subsequent to the briefing and argument of the within appeal in this Court. Doubtless defendant would not have relied upon the merger doctrine had he known that it would be rejected.

was earning in excess of $400,000 and had not, by any means, reached the ceiling of his earning potential. Plainly, as the trial court found, defendant's mid-marriage course of graduate study culminating in his receipt of an MBA degree enabled him to pursue a new and more lucrative career path and, indeed, had a sufficiently dramatic enhancing effect upon his earning potential to account for the magnitude of the afore-stated total enhancement. Nor, even if defendant had argued the point, would there be any ground to disturb the trial court's determination that plaintiff was entitled to a distribution amounting to 40% of that total enhancement. As noted, plaintiff's entitlement in this regard was not predicated upon equities inconsistent with her oft-manifested intent and capac-ity to remain financially independent from defendant, but upon what the trial court found to have been her substantial facili-tation of defendant's decision in mid-marriage to embark upon the full-time, demanding course of study by reason of which his earning potential was ultimately so greatly augmented. The trial court found that plaintiff had been supportive of defendant's studies and new career emotionally and financially, both as a homemaker and as a lender of substantial funds upon extremely favorable terms for the payment of business school tuition. The trial court, we believe, was quite correct in declining defendant's invitation to minimize these contribu-tions.

Defendant's remaining appellate claim relates to the trial court's award of attorney's fees to plaintiff. Although the award is challenged by defendant as representing an insupportable exercise of judicial discretion, we believe the award entirely justifiable given the large disparity in the parties' financial cir-cumstances and what, especially now, after the Court of Ap-peals decision in the matter, is clearly the greater relative legal merit of plaintiff's position as to the enforceability of the nuptial agreement (see, DeCabrera v Cabrera-Rosete, 70 NY2d 879, 881). Concur—Murphy, P. J., Milonas, Nardelli and Tom, JJ.